STOMP, INC., Plaintiff,

v.

NEATO, LLC, Defendant.

No. SA CV 99–669 DOC (ANx).

United States District Court,
C.D. California,
Southern Division.

Aug. 6, 1999.

H Daniel Fuller, Kurt A Strode, Cadden Fuller & Burkhalter, Irvine, CA, for plaintiff.

Timothy L Pierce, Gayle Irene Jenkins, Thelen Reid & Priest, Los Angeles, CA, for defendant.

## ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR TO DECLINE SUBJECT MATTER JURISDICTION, OR TO TRANSFER VENUE

CARTER, District Judge.

Defendant NeatO, LLC ("NeatO") moves to dismiss this matter under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or in the alternative, to decline subject matter jurisdiction or transfer venue under 28 U.S.C. § 1404(a). The novel question before the Court is whether exercising personal jurisdiction over a defendant, whose only contact with the forum state is the use of the new and emerging technology of the Internet, offends "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

## Introduction

On May 11, 1999, the United States Patent and Trademark Office issued Patent No. 5,902,446 (the "'446 Patent") to Peter Tracy for a self-adhesive CD labeling system, of which NeatO is the owner by assignment. Also on May 11, 1999, Plaintiff Stomp, Inc. ("Stomp") initiated this declaratory judgment action pursuant to 28 U.S.C. § 2201 against Defendant NeatO seeking an order that the '446 Patent is invalid and barring NeatO from suing Stomp for infringement. Stomp alleges that NeatO's representatives and counsel had threatened to sue Stomp for infringing the '446 Patent. Stomp maintains that these threats took place both over the phone and during the course of two other patent infringement suits pending between the two parties, one in the United States District Court for the District of Connecticut over a different U.S. patent and the other in Germany over a German patent which contains substantially the same technology as the '446 Patent.

Ten days later, and prior to having been served or notified of this action, NeatO filed suit against Stomp in the United States District Court for the District of Connecticut for infringement of the '446 Patent.

NeatO brings the instant motion to dismiss for lack of personal jurisdiction, or alternatively to decline subject matter jurisdiction or to transfer the case to the District of Connecticut. In response, Stomp argues that this Court has jurisdiction over NeatO by virtue of the fact that NeatO operates a home page on the World Wide Web which can be accessed over the Internet[1] at <http://www.neato.com>;

1. Although familiarity with the Internet is common, a brief explanation is appropriate for the understanding of this case. The Internet is a giant world-wide network which connects innumerable smaller groups of linked computer networks, and is thus described as a "network of networks." It had its beginnings in 1969 when the United States military established the ARPAnet, a high speed, nation-wide network of military mainframe computers, and has since expanded into the largely private network that exists today.

   While there is no physical presence, the information that is available through it is often referred to as being in "cyberspace" or "on the Internet." Individuals can access the Internet from personal computers at home, work, libraries, Internet cafes, and assorted other places, connected to the Internet either by direct wire connections to local networks connected to the Internet or over telephone lines using a modem. Often, connection to the Internet is provided by commercial Internet service providers (ISPs) such as America On-Line and the Microsoft Network.

   Individuals most commonly communicate through the Internet through two means: electronic mail ("e-mail") and the World Wide Web ("WWW" or "the Web"). The Web, which was started in 1991, is a collection of information contained on individual computers connected to the Internet, which is made available in a loosely standardized computer language (hyper-text markup language, or "html"). By using a web-browser, a software program that "navigates" the Web, a user can find voluminous information on topics ranging from the classic rock band Grand Funk Railroad, *see* <http://www.grandfunkrailroad.com>, to the oldest orchestra in America, the New York Philharmonic, *see* < http://www.newyorkphilharmonic.org>. This

that NeatO conducts business over this website by selling goods via the Internet, including goods that incorporate the '446 Patent; that by doing so, NeatO has purposefully availed itself of the protection of the forum state; and that NeatO has actually transacted business in California by selling products to California citizens.[2]

## Discussion

■ Where there is no federal statute controlling the Court's exercise of personal jurisdiction, federal courts must look to the forum state's jurisdictional statute to determine whether it is proper to assert personal jurisdiction. *See Core–Vent Corp. v. Nobel Indus., AB,* 11 F.3d 1482, 1484 (1993); *see also Data Disc, Inc. v. Systems Tech. Assocs.,* 557 F.2d 1280, 1286 (9th Cir.1977). Despite the fact that this is an action where the federal courts have exclusive jurisdiction, *see* 28 U.S.C. § 1338(a), there is no federal jurisdictional statute, and thus California law applies. The California "long-arm statute provides that '[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the

United States.'" Cal.Civ.Proc.Code § 410.10. California courts have held that the limits of the state long-arm statute is co-extensive with the limits of the federal constitution. *See Core–Vent,* 11 F.3d at 1484.

■ Since 1877, defendants have been protected from the unfair exercise of personal jurisdiction by constitutional due process requirements. *See Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877).[3] Modern jurisprudence on personal jurisdiction allows a court to exercise personal jurisdiction only in cases where a defendant has sufficient "minimum contacts" with the forum state[4] that are either continuous and systematic or are so related to the lawsuit that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. In order for a forum state to properly assert jurisdiction over an out of state defendant, the defendant must have purposefully directed its activities towards residents of the forum state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462,

---

information is "posted" by entities on a "home page" or "website." These entities engage in a number of activities, including providing information and selling goods or services. *See generally ACLU v. Reno,* 929 F.Supp. 824 (E.D.Pa.1996) *aff'd* 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997)

2. Stomp presents evidence of two sales made over the Internet by NeatO to California citizens. However, this evidence must be considered in light of the fact that these two sales were made to Stomp's President and a friend of his, both in July and both after this case and the instant motion had been filed.

At oral argument, Stomp also presented evidence that NeatO had participated in trade shows in San Francisco, California, had advertised its products in a trade magazine distributed in California, and represented to the Court that its products are sold at the California locations of at least two major retailers; Fry's Electronics and Best Buys. Because these submissions were untimely and are unnecessary to the Court's finding of personal jurisdiction, they are not considered by the Court.

3. The Supreme Court's opinion in *Pennoyer* applied the due process clause of the Four-

teenth Amendment to the exercise of personal jurisdiction by the courts of the several states, and therefore to federal courts sitting in diversity. But the same due process analysis applies to federal courts in federal question cases, such as this, under the Fifth Amendment's due process clause. *See Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389 n. 2 (8th Cir.1991).

4. Although this is a federal question case, where federal jurisdiction is exclusive of the courts of the states, *see* 28 U.S.C. § 1338(a), modern jurisprudence requires that the Court still examine the contacts with the forum state. *See Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1143 (7th Cir.1975). The examination of contacts with a single state in order to determine the constitutionality of asserting personal jurisdiction appears to contradict the well settled principle that Congress can provide for nationwide service of process, *see Johnson Creative Arts v. Wool Masters, Inc.,* 743 F.2d 947, 950 (1st Cir. 1984), but is nevertheless binding on this Court. *See Dakota Indus.,* 946 F.2d at 1389 n. 2.

472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). Further, the forum-related activities must be related to the claim,[5] and the exercise of jurisdiction must be reasonable. *See Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995).

■ There is little question in the present case that the alleged contacts, NeatO's Internet sales of self-adhesive labeling systems, is closely related to the present action. The products being sold on NeatO's website incorporate the technology of the '446 Patent at issue. The question therefore is whether NeatO's website constitutes minimum contacts with the forum state sufficient to exercise personal jurisdiction over it.

Although several district courts have had an opportunity to rule on the issue, *see, e.g., Millennium Enterprises, Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907 (D.Or.1999) (and cases cited therein), Circuit Court decisions on the issue are understandably scarce, as the Internet has only come into common usage in the last several years. Two decisions are instructive in determining whether the exercise of jurisdiction is proper: the Ninth Circuit's decision in *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir.1997), and the Sixth Circuit's decision in *CompuServe v. Patterson,* 89 F.3d 1257 (6th Cir.1996).[6] In *Cybersell,* the Ninth Circuit found that posting a website which forum residents could access, without any other activity in the forum, was insufficient to subject the site's owner to personal jurisdiction. In

that case, the Ninth Circuit ruled that "the essentially passive nature of [the defendant's] activity in posting a home page on the World Wide Web that allegedly used the service mark of [the plaintiff] does not qualify as purposeful activity invoking the benefits and protections of [the forum state]." But the Ninth Circuit noted that "'[i]nteractive' web sites present somewhat different issues," and that the defendant had "conducted no commercial activity over the Internet in [the forum state]." *Id.* at 418–419. Thus, the *Cybersell* case is distinguishable from the present case in that NeatO has undertaken commercial activity on its website and has offered for sale and sold its products to California citizens via the Internet.

The Sixth Circuit's decision in *CompuServe* addressed the emerging commercial realities of the Internet when it stated that "[s]omeone ... who employs a computer network service like CompuServe to market a product can reasonably expect disputes with that service to yield lawsuits in the service's home state." 89 F.3d at 1268. In that case, CompuServe, a major national Internet service provider, sued Patterson, one of its customers who had used its service to market several shareware software products. Patterson claimed that several products that CompuServe marketed to its customers had used Patterson's software and trademarks. CompuServe filed a declaratory judgment action when Patterson demanded $100,000 to set-

---

5. Traditionally, Courts may exercise either general or specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 1872 nn. 8–9, 80 L.Ed.2d 404 (1984); *but see Id.* 104 S.Ct. at 1875–1879 (Brennan, J., dissenting) (finding a continuum between traditional concepts of specific and general jurisdiction). Since the assertion of specific jurisdiction requires a lower threshold of contacts than does general jurisdiction, the Court addresses only the issue of whether it can assert specific jurisdiction over NeatO.

6. The Second Circuit also has addressed the appropriateness of exercising personal jurisdiction where the only contact with the forum

state is the defendant's website. *See Bensusan Restaurant Corp. v. King,* 126 F.3d 25 (2d Cir.1997) (New York courts did not have personal jurisdiction over the defendant in an action for trademark infringement where defendant operated an informational website for a club in Missouri, not directed at forum residents). But the Second Circuit in that case applied New York's long-arm statue, which is more restrictive than the Fourteenth Amendment, and thus never addressed the constitutional question. The District Court's opinion, however, did touch on the due process considerations. *See Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295, 300 (S.D.N.Y. 1996).

tle his claims. The Sixth Circuit held that since Patterson had used CompuServe as an agent through which to sell his products, he could be subjected to the jurisdiction of CompuServe's home forum. But the Sixth Circuit explicitly stated that it did not reach the question whether "Patterson would be subject to suit in *any* state where his software was purchased or used." *Id.* at 1268 (emphasis in original).

A synthesis of these two cases creates the outline of a rule where personal jurisdiction is not appropriate when a website is merely a passive, either as an advertisement or for informational purposes, but is appropriate when an entity is conducting business over the Internet. In *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997), a federal district court in Pennsylvania found that a sliding scale existed between these two points, and the constitutionality of exercising jurisdiction was "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.*

In the instant case, the nature of NeatO's website is highly commercial. Although NeatO's website provides information about the company, customer service, and technical support, a substantial portion of the site is dedicated to allowing the consumer to purchase NeatO's products on-line.[7] NeatO's on-line sales constitutes conducting business over the Internet, and therefore under the test enumerated in *Zippo*, 952 F.Supp. at 1124, asserting per-

sonal jurisdiction comports with due process.

Asserting personal jurisdiction in this case is also consistent with the familiar precedents of "minimum contacts" jurisprudence. By maintaining a commercial website through which it markets and sells its goods, NeatO has reached out beyond its home state of Connecticut to avail itself of the benefits of the California forum. *See Burger King Corp.*, 471 U.S. at 473–474, 105 S.Ct. at 2182. Although the actual number of sales to California citizens may be small, the critical inquiry in determining. whether there was a purposeful availment of the forum state is the quality, not merely the quantity, of the contacts. *See CompuServe*, 89 F.3d at 1265. By advertising and offering its products for sale via the Internet, NeatO has placed its products into the stream of commerce intending that they would be purchased by consumers with access to the Web, including California citizens.[8] By engaging in Internet commerce with California citizens, NeatO has established the minimum contacts that are a prerequisite to the exercise of jurisdiction over it.

NeatO cannot escape jurisdiction by claiming that its contacts with California are merely fortuitous. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). In *World–Wide Volkswagen*, the plaintiffs sought to force the defendant to litigate a products liability action in Oklahoma on the basis that the defendant, a New York citizen, had sold an automo-

---

7. NeatO's website operates in many ways as a "virtual store." Consumers can view descriptions, prices, and pictures of various products. Consumers can add items to their "virtual shopping cart" and "check out" by providing credit card and shipping information.

8. By selling its products directly to Internet users in California and elsewhere, rather than selling to national distributors that may or may not ship those products into California, NeatO satisfies the requirement of placing a "product into the stream of commerce" and something "more." *See Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S.

102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (O'Connor, J. concurring); *but see id.* at 117, 107 S.Ct. at 1034 (Brennan, J. concurring) (placement of a product into the stream of commerce without additional conduct is sufficient to establish "minimum contacts" necessary for the exercise of personal jurisdiction.) Judge Easterbrook of the Seventh Circuit has explained that many Internet sales are made by a transfer of only a "stream of electrons." *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir.1996). Perhaps it could therefore be said that personal jurisdiction is permissible when an entity places its product into the "stream of electrons."

bile in New York, to New York residents who were involved in an automobile accident in Oklahoma while driving to Arizona. *Id.* In the present case, NeatO's contacts with the forum state are not nearly so attenuated. NeatO marketed its products over the Internet directly to consumers using the Internet. It is not being haled into a court in some unexpected location where the Internet is not commonly available, but into a court in California, where a large portion of the world's Internet users presumably reside.[9]

It is also necessary for Plaintiff's claims to relate to or arise out of Defendant's contacts with the forum state in order for personal jurisdiction to be proper. *See Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872. Although this is not a matter where the complaint is in tort for a defective product shipped into the forum by an out of state defendant, *see e.g., Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), this case revolves around a dispute of the '446 Patent, the technology for which is included in the products sold by NeatO over the Internet. NeatO's contacts therefore are closely related to Stomp's complaint for declaratory judgment.

The third consideration is determining whether the exercise of jurisdiction is reasonable. *See Ballard,* 65 F.3d at 1498. The Ninth Circuit has set out the following seven factors to help guide a court's decision in determining whether the exercise of personal jurisdiction is reasonable:

(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the

forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core–Vent,* 11 F.3d at 1487. An examination of these factors shows that the exercise of jurisdiction in this case is not unconstitutionally unreasonable. On six of the factors, neither party persuades the Court that the balance tips in their favor. Stomp, however, prevails on the second factor.

Here, as in most cases, the burden on the defendant is the critical inquiry in determining whether the Court's exercise of jurisdiction is reasonable. *See Core–Vent,* 11 F.3d at 1490. On this issue, the Supreme Court stated more than forty years ago that:

"[a]s technological progress has increased the flow of commerce between the States ... progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer* [citations omitted] to the flexible standard of *International Shoe* [citations omitted]."

*Hanson v. Denckla,* 357 U.S. 235, 250–251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958). This pronouncement came eleven years before the military established ARPAnet, nineteen years before Apple Computer developed the first personal computer, and thirty-three years before the World Wide Web was developed. This statement, therefore, is far more apt today than it

---

9. It is estimated that some 200 million people worldwide now use the Internet, with the number projected to double annually. *See ACLU v. Reno,* 929 F.Supp. at 831. Approximately 60% of the Internet users reside within the United States. *See id.* By selling its goods via the Internet, NeatO may well be availing itself of all of these fora. But California, the home of the Internet businesses in

Silicon Valley and high-tech research institutions such as the California Institute of Technology and the University of California, holds such a substantial portion of the nation's Internet users that an entity which engages in electronic commerce over the Internet must expect their activities to reach a large number of California residents.

was forty years ago. Although Defendant will have to engage in litigation in another state, traveling a mere five to six hours from Connecticut to California, where the same federal substantive and procedural law applies, where the same language is spoken, and where there will be no need to pass through customs, the inconvenience created by exercising jurisdiction falls short of being unconstitutional.

Admittedly, exercising personal jurisdiction in this case does not strictly comply with "traditional" notions of jurisdiction. *See International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. Indeed, personal jurisdiction based on a website engaged in electronic commerce would not have been possible five years ago, and was certainly not the understanding of jurists in 1868, when the Fourteenth Amendment was adopted. Thus the Court must look to "contemporary notions of due process" to determine whether personal jurisdiction is allowable. *See Burnham v. Superior Court,* 495 U.S. 604, 630, 110 S.Ct. 2105, 2120, 109 L.Ed.2d 631 (1990) (Brennan, J. concurring). It cannot be said, in light of the mobility of today's society, the ease of instantaneous communication between people on opposite sides of the globe,[10] and the frequency of interstate travel, that it would offend the Constitution to require an entity to defend a case under federal law in a state within which it has engaged in commerce.

Some courts have found the idea that personal jurisdiction may be based on an entity's Internet activities to be disconcerting. *See e.g., Millennium Enterprises,* 33 F.Supp.2d at 923. Those courts have feared that such exercise of jurisdiction would open "the Web user up to inconsistent regulations" and "raises the specter of dramatically chilling what may well be the

most participatory marketplace of mass speech that this country—and indeed the world—has yet seen." *Id.* (Internal citations omitted.) This Court shares those concerns. Indeed, if the exercise of jurisdiction via the Internet served to expose an entity to state law claims which it had no notice of, or which were entirely foreign to the laws of its home forum, then a closer inspection of the fundamental fairness of such jurisdiction might be required. But no such choice of law consideration presents itself here as this case involves federal patent law.

The Court also recognizes that such a broad exercise of personal jurisdiction over defendants who engage in commerce over the Internet might have devastating effects on local merchants and small businesses that seek to expand through the Internet. These small businesses make up the backbone of the American economy and should not have to bear the burden of defending suits in distant fora when they mean only to allow local consumers to buy their wares from the convenience of their own homes. This concern must be balanced against the ability of a distant consumer to press its cause against a defendant who uses the Internet to do business within the forum while remaining outside the boundaries of the jurisdiction. Although a Plaintiff who seeks relief from the courts must be willing to overcome many of the hurdles that the litigation process imposes, it is the merchants who seek to sell their goods only to consumers in a particular geographic that can control the location of resulting lawsuits. The owner of a website can (1) include a disclaimer that it will not sell its products outside a certain geographic area, and (2) an interactive "clickwrap agreement"[11]

---

10. It is worth noting that the new Ronald Reagan Federal Building and United States Courthouse, where this Court sits, has the equipment to allow both teleconferencing and video-conferencing for parties and counsel when necessary.

11. A "clickwrap agreement" allows the consumer to manifest its assent to the terms of a

contract by "clicking" on an acceptance button on the website. If the consumer does not agree to the contract terms, the website will not accept the consumer's order. Such agreements are common on websites that sell or distribute software programs that the consumer downloads from the website. The term "clickwrap agreement" is borrowed from the idea of "shrinkwrap agreements,"

that includes a choice of venue clause which a consumer must agree to before being allowed to purchase any products. *See Groff v. America Online, Inc.,* 1998 WL 307001 (R.I.Super.1998) (holding that such "clickwrap agreements" are enforceable contracts). In this way, a local merchant may limit the jurisdictions to which it may be haled into court. But when a merchant seeks the benefit of engaging in unlimited interstate commerce over the Internet, it runs the risk of being subject to the process of the courts of the those states.[12]

It is apparent that a federal policy has emerged which seeks to promote the Internet as a tool for communication and trade. *See* Internet Tax Freedom Act, Pub.L. No. 105–277, § 1100, 112 Stat. 2681, 2681–718 (1998); *see also Reno v. ACLU,* 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (holding the Communications Decency Act of 1996 unconstitutional); *ACLU v. Reno,* 31 F.Supp.2d 473 (E.D.Pa. 1999) (preliminarily enjoining enforcement of the Child On–Line Protection Act of 1998). But such policy considerations do not make it unconstitutional to exercise personal jurisdiction over entities that sell their products over the Internet. It is the province of the state legislatures to define who should be haled into the courts of the several states, and it is indisputably within Congress' power to prohibit federal courts from exercising personal jurisdiction in these types of cases. Conceivably, Congress could use its power under the Commerce Clause, U.S. Const. art. I, § 8, cl.3, to prevent all American courts from exercising personal jurisdiction on the basis of an entity's Internet contacts with the forum. But until the legislative branch exercises that prerogative, this Court must apply the law as it is.

Defendant's alternative motions to decline subject matter jurisdiction or to transfer to another venue for convenience are disposed of posthaste. For this Court to have subject matter jurisdiction over an action for Declaratory Judgment under 28 U.S.C. § 2201, there must exist an actual controversy. *See GAF Bldg. Materials Corp. v. Elk Corp. of Dallas,* 90 F.3d 479, 481 (Fed.Cir.1996). NeatO argues that there was no actual controversy because it had not acted in a way to create in Stomp a reasonable apprehension of being sued for infringement. Accepting at face value its contention that it never made any threats to sue Stomp, NeatO's arguments are disingenuous at best. When this action was filed, NeatO was already suing Stomp over the infringement of another U.S. patent, which itself might give Stomp the belief that it would be sued again. In addition, NeatO was suing Stomp in Germany for infringing its German patent that was substantially the same as the '446 Patent. This would naturally give Stomp the impression that NeatO would sue it in the United States once the '446 Patent was issued. NeatO's claim that Stomp could not have been in reasonable apprehension is undermined by the fact that NeatO filed a patent infringement suit on May 21, 1999, ten days after the '446 Patent had issued and before NeatO knew of this action. NeatO's final argument rests on the fact that the alleged threats were made prior to the issuance of the '446 Patent, and thus were merely hypothetical. But, as NeatO points out, the Court in *GAF Building Materials* stated that "[a] threat is not sufficient to create a case or controversy unless it is made with respect to a patent that has issued before a complaint is filed." 90 F.3d at 482. Here, the '446 Patent was issued prior to the filing of this action.[13] Had Stomp filed on May 10,

---

which are generally license agreements placed inside the cellophane "shrinkwrap" of computer software boxes that, by their terms, become effective once the "shrinkwrap" is opened.

**12.** NeatO's argument that it had no reasonable expectation of being haled into this court is dubious in light of the two suits it has

previously filed against Stomp, a California corporation, whom NeatO complains is infringing its patents by the goods Stomp sells in California.

**13.** Although both the issuance of the '446 Patent and the filing of this lawsuit occurred on May 11, 1999, it is obvious that the '446 Patent was issued earlier in the day because

there would be no controversy. But since "[p]atent rights are created ... upon the formal issuance of the patent ..." *id.* at 483, NeatO could have filed a patent infringement action as soon as the patent issued on May 11. Thus, whatever "hypothetical" apprehension Stomp may have had prior to May 11, it became real with the issuance of the patent, and there existed a justiciable controversy.

■ NeatO's motion to transfer is also inappropriate. As NeatO points out, where two actions involving the same parties and issues are filed in separate districts, the cases may be consolidated in the district where the first action was filed. The "first-to-file" rule generally applies unless there is bad faith, anticipatory filing, or forum shopping. *See Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 628 (9th Cir.1991). NeatO has shown neither bad faith nor anticipatory filing. NeatO contends that Stomp engaged in forum shopping, but Stomp's decision to sue in its home forum of California does not amount to impermissible forum shopping.

■ NeatO's arguments that considerations of convenience and judicial economy favor transfer are equally unavailing. "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986). NeatO contends that transfer is appropriate in the interest of judicial economy because there are two other '446 Patent infringement cases pending in the District of Connecticut which are being heard before the same judge and which might be consolidated with a third controversy over the '446 Patent, which is pending before a different judge in that district. No documents are submitted to show the status of any motions to consolidate in those case, but the Court takes judicial notice that motions to dismiss or transfer venue are pending in

the Connecticut actions. If those motions are successful, and they appear to have at least some merit, transferring this matter to the District of Connecticut would not be in the interests of judicial economy. Finally, transferring the case to the District of Connecticut because NeatO has filed other patent infringement actions there would allow Defendant to avoid the requirements of the "first-to-file" rule by suing multiple parties in separate actions. Defendant therefore has failed to make a showing of inconvenience sufficient to warrant upsetting Plaintiffs choice of forum.

## Conclusion

Accordingly, for the reasons set forth above, Defendant's motion to dismiss for lack of personal jurisdiction, or alternatively to decline subject matter jurisdiction or transfer venue is DENIED.

IT IS SO ORDERED.

---

Stomp attached as Exhibit "A" to its complaint a copy of the '446 Patent, complete with the date of issuance.