**AMERICAN EYEWEAR, INC., Plaintiff,**

v.

**PEEPER'S SUNGLASSES AND ACCESSORIES, INC., et al., Defendants.**

No. CIV. A. 3:99CV1657–D.

United States District Court, N.D. Texas, Dallas Division.

May 16, 2000.

Peter S. Vogel(argued), Scott L. Davis, Kay L. Schwartz, Eric S. Levy, Gardere & Wynne, L.L.P., Dallas, TX, Elisabeth A. Evert, Sidley & Austin, Dallas, TX, for Plaintiff.

Jonathan E. Moskin(argued), Jacqueline Lesser, Pennie & Edmonds, L.L.P., New York City, Corbet F. Bryant, Jr., Craig W. Weinlein, Lara H. Hollingsworth, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

Plaintiff American Eyewear, Inc. ("AEI"), a Texas corporation with its principal place of business in Dallas, Texas, owns the stylized trademark PEEPER'S, which is registered under federal trademark law and Texas trademark and service mark law. Defendant Peeper's sunglasses and Accessories, Inc., now known as Peepers, Inc. ("PI"), whose principal place of business is in Duluth, Minnesota, owns the Internet domain name "peepers.com" and sells sunglasses and related accessories via this web site. PI is a subsidiary of defendant Eyecity.com, Inc. ("Eyecity"), formerly known as Ergovision, Inc., whose principal place of business is in Plainview, New York. AEI sues defendants on various theories of trademark infringement and unfair competition arising from use of the "peepers.com" domain name. On defendants' motion to dismiss, the court must decide questions of *in personam* jurisdiction and venue.

## I

Since 1976 AEI has used the PEEP-ER'S service mark and trade name in the sale of prescription and non-prescription eyewear and related services at retail stores in the Dallas/Fort Worth, Texas area and in extensive nationwide advertising.[1] PI started business in 1989 in North Dakota and relocated to Minneapolis, Minnesota in 1993. In the interim, it opened a second office in Duluth, Minnesota. PI sold retail optical products, but not in Texas. In 1998 PI purchased the domain name "peepers.com" from a predecessor that had originally registered the name in 1996. PI began using the web sites "peepers.com" and "peepers2000.com"[2] to sell retail optical products over the Internet.[3] Although the word "peepers" is part of these domain names, PI does not sell products under the "peepers" name, brand, or mark. The trademarks that appear on its products are those of third-party manufacturers. Eyecity is a retail seller of optical products. It acquired PI in 1999 as a subsidiary. Eyecity owns the capital stock of PI but does not own the domain name "peepers.com" and does no business anywhere under the "peepers" name.

AEI alleges that, by engaging in e-commerce[4] using the Internet domain name "peepers.com," PI and Eyecity are likely to cause confusion, mistake, or deception as to the source and origin of their services and products and that the public is likely to believe that AEI provides, sponsors, approves, or licenses, or is affiliated or connected with, defendants' services. AEI sues defendants on theories of (1) false designation of origin-unfair competition, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) federal trademark infringement, in violation of § 32(1) of the Trademark Act of 1946, 15 U.S.C. § 1114(1); (3) common law unfair competition; and (4) injury to business reputation and dilution of the distinctive quality of a registered mark, in violation of Tex.Bus. & Com.Code § 16.29 (West Supp.2000).[5]

Neither PI nor Eyecity (1) has offices, sales agents, or other representatives who live or work in Texas, (2) has a registered agent, owns or leases real or personal property, or has bank accounts or telephone listings in Texas, (3) has marketed its optical products in, directly advertised in, or sent sales representative to Texas; or (4) is licensed to do business or has paid taxes in Texas. PI's retail stores in Minnesota have not made any sales to customers in Texas. Eyecity has sold approximately 24 orders for computer glasses, bearing the trademark EYETOOLS, to Texas residents. These sales stemmed from a promotional program with a computer manufacturer in which that company distributed to computer purchasers an offer to buy EYETOOLS products. These sales represent fewer than 1% of Eyecity's total sales. Eyecity has not sold or offered to sell to Texas residents any products that bear the name "peepers."

---

1. The court recounts the pertinent evidence according to the standards that apply when it decides a motion to dismiss without conducting an evidentiary hearing. The court accepts as true the uncontroverted allegations of AEI's complaint and resolves in AEI's favor any factual conflicts posed by the parties' affidavits. *See Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999).

2. For technical reasons, when Internet users point their browsers at "peepers.com," they are linked to the site "peepers2000.com."

3. PI also uses the "peepsun.com" address.

4. "E-commerce" is defined as "[c]ommercial activity that takes place by means of connected computers. Electronic commerce can occur between a user and a vendor through an online information service on the Internet, or a BBS, or between vendor and customer computers through electronic data interchange (EDI)." MICROSOFT ENCARTA WORLD ENGLISH DICTIONARY (computer version).

5. AEI also requests that defendants be required to transfer the "peepers.com" domain name to AEI and that they be enjoined from using that domain name.

PI's sole source of contact with Texas residents is via the "peepers.com" web site, through which it receives and processes orders for eyewear. The computers or servers[6] that host the web sites "peepers.com" and "peepers2000.com." are located in New York. Anyone with Internet access can at anytime connect with the "peepers.com" site and make purchases. Like many other e-commerce sites on the Internet, the "peepers.com" site allows customers to log on and browse interactively until they find the type of eyewear they wish to purchase. Customers complete order forms that specify the shipping address and credit card to be billed. The form is electronically submitted to PI over the Internet, and the product is packaged and shipped to the customer. An e-mail message that confirms the purchase is also sent to the customer. PI regularly sells products to Texas customers in this manner. According to records maintained by PI between October 11, 1999 and December 2, 1999, sales to Texas residents occurred almost daily and typically involved multiple transactions each day. Sales via the "peepers.com" and "peepers2000.com" web sites to persons who listed Texas addresses, however, constituted fewer than ½ % (*i.e.*, .005) of PI's total sales.

Eyecity sells optical products to Texas residents via its "ergovision.com" web site. That site does not use the name "peepers."

## II

Defendants first move to dismiss this case for lack of *in personam* jurisdiction.[7]

## A

The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC,* 190 F.3d 333, 335 (5th Cir.1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over defendants would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.; Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 214 (5th Cir.2000).

"The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.' To comport with due process, the defendant's conduct in connection with the forum state must be such that he 'should reasonably anticipate being haled into court' in the forum state." *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999) (footnotes omitted). To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of

---

**6.** A "server," short for "file server," is a "computer in a network that stores application programs and data files accessed by the other computers in the network." MICROSOFT ENCARTA WORLD ENGLISH DICTIONARY (computer version).

**7.** The court permitted AEI to conduct discovery for the purpose of opposing defendants' motion to dismiss. The court also allowed the parties to file additional briefing (a surreply and final reply) and additional evidence (a reply appendix) to that normally permitted under the local civil rules. Accordingly, although defendants filed their motion to dismiss on October 12, 1999, briefing did not conclude until April 6, 2000. The court heard oral argument on May 11, 2000.

controversies, and (5) the states' shared interest in fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir.1993).

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.' " *Id.* (citations omitted).

"When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction." *Latshaw*, 167 F.3d at 211 (footnotes omitted).

### B

The court considers first whether it may exercise specific or general jurisdiction over Eyecity.

■ The court cannot exercise specific jurisdiction because defendants have established that Eyecity does not own the domain name "peepers.com." [8] Eyecity owns PI, who owns the domain name. A parent corporation is not subject to the jurisdiction of a forum state merely because of the business activity of a subsidiary in that forum. *Alpine View*, 205 F.3d

at 218. Nor is 100% stock ownership and commonality of officers and directors alone sufficient to establish jurisdiction over a parent through its subsidiary. *Id.* at 219. Moreover, Eyecity does not sell products to Texas residents under the "peepers" name. Accordingly, AEI's suit against Eyecity cannot arise from, or be directly related to, Eyecity's contacts with Texas.

■ Nor can the court exercise general jurisdiction over Eyecity. AEI maintains that the court can do so based on Eyecity's operation of the "ergovision.com" web site. It contends the "ergovision.com" site is interactive and operates much like the "peepers.com" web site, and supports the exercise of general jurisdiction on the same reasoning that AEI asserts concerning the operation of that site. General jurisdiction, however, requires continuous and systematic contacts. *See Mink*, 190 F.3d at 336. The evidence shows that via the "ergovision.com" web site, Eyecity has made merely a handful of sales, totaling less than $360, to Texas residents. *See* P.App. at 94–106 (listing sales). Eyecity does not have the continuous and systematic contacts necessary to confer general jurisdiction. The court therefore dismisses AEI's action against Eyecity, without prejudice, for lack of *in personam* jurisdiction.[9]

### C

#### 1

PI contends the court lacks both general and specific personal jurisdiction over it. It maintains that there is no general jurisdiction because it lacks continuous and systematic contacts with Texas. PI argues

---

**8.** The court recognizes that it must resolve conflicts in the parties' affidavits in favor of AEI as the party seeking to establish *in personam* jurisdiction. AEI relies on ambiguities in the briefing, however, to argue that the court must presume that Eyecity owns the domain name. In their reply appendix, defendants have established that PI owns the domain name. In its surreply, AEI has not introduced contrary evidence. The court

therefore holds that Eyecity has successfully countered AEI's assertion that Eyecity owns the "peepers.com" domain name.

**9.** This result is not inconsistent with the court's holding below regarding PI because there the court is basing its personal jurisdiction holding on *specific*, not *general*, jurisdiction.

that the court does not have specific jurisdiction because PI's operation of an Internet web site, without more, is insufficient to constitute conduct that is purposefully directed at Texas. PI posits that it has done nothing purposefully to avail itself of the privilege of doing business in Texas. AEI argues that there is specific jurisdiction because its trademark and unfair competition claims are based on PI's use of the interactive "peepers.com" web site to sell eyewear to Texas residents.

2

Because AEI's causes of action arise directly from PI's contacts with Texas residents via the web site that AEI contends infringes its PEEPER'S mark, the court need only address specific jurisdiction. *See Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir.1987) (holding that specific personal jurisdiction exists where cause of action arises out of defendant's contacts with forum). Even a single contact can support specific jurisdiction. *Id.*

**10.** The Fifth Circuit adopted *Zippo*'s sliding scale in *Mink*. *Mink*, 190 F.3d at 336. Although *Mink* was a general jurisdiction case, *see id.* ("Because we conclude that Mink has not established any contacts directly related to the cause of action required for specific jurisdiction, we turn to the question of whether general jurisdiction has been established."), and *Zippo* was a specific jurisdiction case, *see Zippo*, 952 F.Supp. at 1127 ("the cause of action arises out of [defendant's] forum-related conduct in this case"), the *Mink* panel found "the reasoning of *Zippo* [to be] persuasive and adopt[ed] it in this Circuit," *Mink*, 190 F.3d at 336. It therefore appears that *Mink*'s sliding scale should be applied in the present specific jurisdiction context.

**11.** *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264–68 (6th Cir.1996) (holding that Texas resident who entered into contract to distribute shareware through plaintiff's Internet server in Ohio and electronically uploaded 32 master software files into plaintiff's server in Ohio via the Internet was subject to jurisdiction in Ohio); *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F.Supp.2d 1104, 1109–11 (C.D.Cal.1999) (holding in copyright infringement action that defendant who entered into continuing contractual relationships with subscribers that allowed subscribers to access

■ "Whether or not a party's web site can be a basis for personal jurisdiction is a new but burgeoning area of law." *Origin Instruments Corp. v. Adaptive Computer Sys., Inc.*, 1999 WL 76794, at *2 (N.D.Tex. Feb.3, 1999) (Lindsay, J.). The court examines "the nature and quality of commercial activity that an entity conducts over the Internet," applying a sliding scale to determine whether it can constitutionally exercise personal jurisdiction. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997).[10] At one terminus of the spectrum—where jurisdiction is proper—defendants clearly engage in business over the Internet "by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet....'" *Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F.Supp. at 1124).[11] At the other terminus—where jurisdiction is improper—are cases in which defendants merely establish passive web sites that are no more than advertisements on the Internet.[12] In the middle of

members-only area of defendant's web site and download photographs was subject to personal jurisdiction in California); *Zippo*, 952 F.Supp. at 1125–27 (holding in trademark infringement and dilution action that defendant who entered into ongoing contracts with subscribers and Internet service providers for purpose of allowing subscribers to view and download newsgroup messages from defendant's web site was subject to specific jurisdiction in Pennsylvania).

**12.** *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295–99 (10th Cir. 1999); *Cybersell v. Cybersell, Inc.*, 130 F.3d 414, 417–19 (9th Cir.1997); *Nutrition Physiology Corp. v. Enviros Ltd.*, 87 F.Supp.2d 648, 654–55 (N.D.Tex.2000) (Cummings, J.); *Neato, Inc. v. Great Gizmos*, 2000 WL 305949, at *3–*5 (D.Conn. Feb.24, 2000); *Bailey v. Turbine Design, Inc.*, 86 F.Supp.2d 790, 795–97 (W.D.Tenn.2000); *Minge v. Cohen*, 2000 WL 45873, at *2 (E.D.La. Jan.18, 2000); *Loudon Plastics, Inc. v. Brenner Tool & Die, Inc.*, 74 F.Supp.2d 182, 185–87 (N.D.N.Y.1999); *Fix My PC, L.L.C. v. N.F.N. Assocs., Inc.*, 48 F.Supp.2d 640, 642–43 (N.D.Tex.1999) (Lindsay, J.); *Atlantech Distrib., Inc. v. Credit Gen. Ins. Co.*, 30 F.Supp.2d 534, 536–37 (D.Md. 1998); *Bush v. Tidewater Marine Alaska, Inc.*,

the spectrum are cases in which defendants maintain web sites that allow users to exchange information with a host computer. *See id.* "In this middle ground, 'the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website.'" *Id.* (quoting *Zippo,* 952 F.Supp. at 1124). "This sliding scale is intended to assess personal jurisdiction vis-a-vis the nature and quality of the commercial activity a defendant conducts over the internet." *Origin Instruments,* 1999 WL 76794, at *3.

3

■ AEI has established a prima facie case for specific jurisdiction. PI's web site is the type that falls in the middle of the continuum. *Id.* (holding that interactive web sites—in which users can exchange information with host computer and communicate with person or company that runs web site—are in middle category). PI knowingly enters into contracts with Texas residents for commercial gain. PI's use of the "peepers.com" domain name to make sales to Texas residents is the basis for AEI's claims against PI. Users of this web site interact with the site and PI's employees by using the Internet to submit product order forms that contain credit card and shipping information. Customers can receive personalized service directly from the web site by using the site's e-mail option to transmit questions or requests to PI's customer service department. PI ships directly to the homes of Texas residents products that they order over the Internet. PI even provides customers with user names and passwords to process future orders more conveniently. Daniel D. Thralow ("Thralow"), Vice President of Operations of Eyecity and President of PI, concedes that PI attempts to reach every person, including all Texans, who have Internet access and to provide them with the opportunity to purchase PI's products from anywhere, at any time.

1998 WL 560048, at *4 (E.D.Tex. Apr.16,

The purpose and level of interactivity of the "peepers.com" e-commerce web site are analogous to the site in *Stomp v. NeatO, LLC,* 61 F.Supp.2d 1074 (C.D.Cal. 1999). In *Stomp* a California federal court exercised specific personal jurisdiction over a Connecticut defendant in a declaratory judgment action that sought to invalidate the defendant's patent for a self-adhesive compact disc labeling system. The court found that although defendant's web site merely provided information about the company, customer service, and technical support, a substantial portion of the site was dedicated to facilitating on-line purchases of defendant's products. *Id.* at 1078. The court concluded that the site functioned as a "virtual store" where "[c]onsumers [could] view descriptions, prices, and pictures of various products . . . [and could] add items to their 'virtual shopping cart' and 'check out' by providing credit card and shipping information." *Id.* at 1078 n. 7. It held that

[b]y maintaining a commercial website through which it markets and sells its goods, NeatO has reached out beyond its home state of Connecticut to avail itself of the benefits of the California forum. Although the actual number of sales to California citizens may be small, the critical inquiry in determining whether there was a purposeful availment of the forum state is the quality, not merely the quantity, of the contacts. By advertising and offering its products for sale via the Internet, NeatO has placed its products into the stream of commerce intending that they would be purchased by consumers with access to the Web, including California citizens. By engaging in Internet commerce with California citizens, NeatO has established the minimum contacts that are a prerequisite to the exercise of jurisdiction over it.

*Id.* at 1078 (citations and footnote omitted).[13]

1998).

4

PI's reliance on Judge Lindsay's opinion in *Origin Instruments* to defeat jurisdiction is misplaced. *Origin Instruments* and the instant case are alike in that both web sites fall at the mid point of the sliding scale. But unlike the present case, the plaintiff in *Origin Instruments* failed to carry its burden of proof, leading Judge Lindsay to hold that "there is no evidence in the record to establish that Defendant has been interacting with anyone in Texas through its web site." *Origin Instruments*, 1999 WL 76794, at *4 (footnote omitted). In fact, the "undisputed evidence reflect[ed] that Defendant ha[d] made no sales to any Texas resident, through its web site or otherwise[.]" *Id.* Judge Lindsay concluded that "[p]ersonal jurisdiction should not be premised on the mere possibility that a Defendant may be able to do business with Texans over its web site, with nothing more, rather Plaintiff must show that Defendant has 'purposefully availed itself' of the benefits of the forum state and its laws." *Id.* In today's case, AEI has shown that PI does more than merely maintain a web site; it

regularly transacts business with Texas residents over its "peepers.com" web site.

■ PI argues that the court lacks jurisdiction because PI does not sell products that themselves bear the "peepers" name, mark, or brand. The basis for AEI's lawsuit, however, is PI's use of the "peepers.com" domain name to sell products, not its sale of products that bear the "peepers" name. Aside from any relevance that this assertion may have to the merits of AEI's claims, it is inadequate to demonstrate the absence of *in personam* jurisdiction.

■ PI also asserts that the "peepers.com" "web site does not 'exist' in Texas since PI and the computers that host the site are not located here ... [and][b]ecause the website is not based in Texas, the mere existence of the site is not a basis for specific jurisdiction in this state." D.Am.Rep.Br. at 6. PI posits that its web site is "no different from advertising in a national magazine that a Texas resident can view whenever he or she wants." *Id.* at 7. The court disagrees. The physical location of PI's web site servers is not dispositive. By encouraging Texas residents to interact and purchase products from the "peepers.com" site, PI risks in-

**13.** *See Thompson v. Handa–Lopez, Inc.*, 998 F.Supp. 738, 744 (W.D.Tex.1998) (exercising specific personal jurisdiction over California corporation that operated Internet casino that continuously interacted with casino players, entered into contracts with casino players from various states knowing that it would receive immediate financial gain, and where Texas plaintiff played casino games while in Texas); *cf. Telephone Audio Prods., Inc. v. Smith*, 1998 WL 159932, at *3 (N.D.Tex. Mar.26, 1998) (Solis, J.) (exercising specific personal jurisdiction over Ohio partnership where defendant maintained web site that contained allegedly infringing trademark, accessible to Texas residents, attended trade show in Dallas at which infringing mark was displayed, received orders from distributors in Houston and Dallas, and advertised in magazine, some of whose readers may be in Texas); *Mieczkowski v. Masco Corp.*, 997 F.Supp. 782, 787 (E.D.Tex.1998) (exercising jurisdiction over defendant North Carolina company where, viewing all contacts, defendant shipped over $5.7 million worth of prod-

ucts to Texas residents during prior six years, consummated over 250 transactions with Texas residents accounting for $717,000 in 1997, generated 3.2% of gross sales income from sales to Texas residents, bought products from Texas supplier, did semiannual direct mailing to Texas residents who were former customers, and operated interactive web site, accessible by Texas residents, where customers could purchase products via e-mail and check status of current orders); *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328, 1330 (E.D.Mo.1996) (exercising personal jurisdiction over defendant Internet service provider that operated web site that promoted upcoming service and encouraged users to add their address to mailing list to receive updates about service); *Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161, 162 (D.Conn.1996) (exercising personal jurisdiction over Massachusetts defendant whose contacts with Connecticut were limited to posting web site that was accessible to approximately 10,000 Connecticut residents and maintaining toll-free number).

fringing AEI's PEEPER'S registered mark in Texas, where the purchase is at least partially consummated.[14] Nor, as PI urged during oral argument, is PI's conduct similar to placing an advertisement in a magazine of national circulation. The cases that PI cites for this proposition are inapposite.

*Bearry* did not involve a web site or specific jurisdiction. *See Bearry*, 818 F.2d at 375. The Fifth Circuit held there was no general jurisdiction because the defendant "exercised its right to structure its affairs in a manner calculated to shield it from the general jurisdiction of the courts of ... Texas[.]" *Id.* at 375–76. PI has not attempted to structure its affairs to avoid jurisdiction in this case.

In *Fix My PC, L.L.C. v. N.F.N. Assocs., Inc.*, 48 F.Supp.2d 640 (N.D.Tex.1999) (Lindsay, J.), Judge Lindsay found specific jurisdiction lacking because the record contained no evidence that the defendant had conducted any business via its web site, nor was there any proof that the defendant's toll-free number was posted on the web site. *Id.* at 644. In the present case, PI sells products to Texas residents through its web site and prominently displays a toll-free sales number on the site.

In *McDonough v. Fallon McElligott, Inc.*, 1996 WL 753991 (S.D.Cal. Aug. 5, 1996), the court lacked specific jurisdiction because the plaintiff's infringement claim did not depend on the defendant's advertisement circulated in a national magazine. *Id.* at *6. By contrast, AEI's present claims necessarily depend on the activity that occurred through PI's web site. PI's repeated transaction of business with Texas residents through its site constitutes more than merely "fortuitous" contact with this forum. *See Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1248 (10th Cir.2000).

PI also insists that it was ignorant of AEI when it began in business more than ten years ago under the name "peepers," and therefore had no reason to foresee being haled into court in Texas. It avers that the small amount of sales made to Texas residents confirms that its use of the "peepers.com" domain name is not directed at Texas. Thralow's deposition testimony, however, confirms that by establishing an e-commerce web site, PI intended to direct its name and products at everyone with Internet access. PI opted to transact business with Texas residents. It cannot now maintain that it did not foresee the consequences of interactively selling its products in this state. *Cf. Bearry*, 818 F.2d at 375–76 (holding general jurisdiction improper in Texas where defendant in products liability action required that negotiation, completion, and performance of all contracts occur in Kansas to avoid being subjected to jurisdiction in other states); *Thompson v. Handa–Lopez, Inc.*, 998 F.Supp. 738, 742 (W.D.Tex.1998) ("Given the nature of general jurisdiction, corporations have a right to structure their affairs to avoid the general jurisdiction of a state's courts.").

PI has attempted through its interactive web site to establish a retail presence in Texas. In doing so, it has purposefully availed itself of the privilege of conducting business here, and specific jurisdiction is proper.

### D

The court next considers whether exercising jurisdiction over PI offends traditional notions of fair play and substantial justice.

■ "[W]here minimum contacts have been established, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Thompson*, 998 F.Supp. at 744 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528

---

**14.** This conclusion is made in the context of PI's challenge to *in personam* jurisdiction and suggests no view concerning the merits of AEI's causes of action.

(1985)). The reasonableness of jurisdiction is measured by analyzing (1) the burden on the defendants, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interest of the interstate judicial system in the most efficient resolution of disputes, and (5) the collective interests of states in furthering important substantive social policies. *See Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 215 (5th Cir.1999) (citing *Ruston,* 9 F.3d at 421).

■ Exercising personal jurisdiction over PI is consistent with traditional notions of fair play and substantial justice. PI has availed itself of this forum by conducting business directed at Texas residents over the Internet. It has knowingly made sales to Texas residents and was fully aware that its services would reach this forum. Texas has a strong interest in protecting its citizens' property rights and providing them a remedy against unlawful (assuming *arguendo* that it is) use of their registered marks.

PI urges the court to exercise caution in applying jurisdictional principles to Internet commerce. It maintains that allowing computer interaction via the Internet "to supply sufficient contacts to establish jurisdiction would eviscerate the personal jurisdiction requirement as it currently exists." Ds.Am.Rep.Br. at 9 (quoting *Millennium Enters., Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907, 910 (D.Or. 1999)). *Stomp* addressed similar concerns about the melding of modern e-commerce with traditional jurisdiction principles.

*Stomp* recognized that "[i]ndeed, if the exercise of jurisdiction via the Internet served to expose an entity to state law claims which it had no notice of, or which were entirely foreign to the laws of its home forum, then a closer inspection of the fundamental fairness of such jurisdiction might be required." *Stomp,* 61 F.Supp.2d at 1080. As in *Stomp,* however, no such concerns exist in this case. PI could reasonably have foreseen that "peepers," being a common nickname for eyes, would already be registered as a trademark for a company that manufactures or sells eyewear. It could reasonably have anticipated being haled into court to defend against trademark-related claims if it chose to do business in that company's locale. PI intentionally elected to sell its products to residents of fora reachable by the Internet and, consequently, has been haled into a court in one forum whose residents it reached. It is PI's conduct in selling its products to these residents that forms the basis for AEI's lawsuit.

Moreover, PI could arguably have avoided subjecting itself to personal jurisdiction in Texas by taking such steps as (1) incorporating into its web site purchase order form a "clickwrap agreement"[15] that contained a choice of venue clause, (2) including a disclaimer that it would not sell products in Texas,[16] or (3) simply disabling the site so that it would not accept orders from, or allow shipments to, Texas residents. *See id.* at 1080–81. PI deliberately sought the benefits of engaging in unlimit-

---

**15.** A "clickwrap agreement" allows a consumer to assent to the terms of a contract by selecting an "accept" button on the web site. *See id.* at 1080 n. 11. If the consumer does not accept the terms of the agreement, the web site will not complete the transaction. *Id.*

**16.** Thralow states in his deposition testimony that PI chose not to include a Texas disclaimer because "we will ship product anywhere." P.App. at 52. PI could have opted, however, to follow an approach like the one in *Ty, Inc. v. Clark,* 2000 WL 51816, at *4 (N.D.Ill.

Jan.14, 2000) (holding in trademark infringement action that defendants who operated web site that was neither used to take orders nor to enter into contracts, and where defendants made it extremely clear on web site that they did not conduct on-line transactions and that consumers who wished to purchase defendants' products were required to print out order form and either fax, telephone, or send form by traditional mail to defendants' offices, defendants were not subject to personal jurisdiction in Illinois).

ed interstate commerce over the Internet and, consequently, subjected itself to the jurisdiction of this court. *See id.* at 1081.

### III

.PI moves to dismiss pursuant to Fed. R.Civ.P. 12(b)(3) for improper venue. Venue is proper in this case, however, based on 28 U.S.C. § 1301(c),[17] because PI is subject to personal jurisdiction in this forum. *See, e.g., Origin Instruments,* 1999 WL 76794, at *1 (holding that if defendant is subject to *in personam* jurisdiction in Northern District of Texas, venue is also proper in this district). The court denies PI's motion to dismiss on this basis.

\* \* \*

The court grants Eyecity's motion to dismiss and dismisses this action against it without prejudice by Rule 54(b) judgment filed today. The court denies PI's motion to dismiss.

SO ORDERED.

---

**17.** Section 1391(c) provides:

For purposes of venue ... a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.