**RAINY DAY BOOKS, INC., Plaintiff,**

v.

**RAINY DAY BOOKS & CAFÉ, L.L.C., Defendant.**

No. 01–2083–DJW.

United States District Court, D. Kansas.

Feb. 5, 2002.

Geoffrey B. Jennings, Gresham, OR, for plaintiff.

Jeffrey J. Simon, Kyle L. Elliott, Blackwell Sanders Peper Martin LLP, Kansas City, MO, Michael G. Rust, Groswold & Lee, P.A., Waston, MD, for defendant.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Plaintiff filed this action seeking damages and injunctive relief for alleged service mark infringement under the Lanham Act, 15 U.S.C. § 1051, *et seq.* Plaintiff also alleges state statutory and common law claims for trademark infringement and unfair competition. This matter is presently before the Court on Defendant's Motion to Dismiss Plaintiff's Petition (doc. 3). For the reasons set forth below, Defendant's Motion to Dismiss Plaintiff's Petition is denied.

## I. Background

Plaintiff is a Kansas corporation with its principal office and place of business locat-

ed in Fairway, Kansas. Plaintiff is the managing company for its retail bookstore operating under the name Rainy Day Books. In 1977 and 1992, Plaintiff registered "Rainy Day Books" as its service mark with United States Patent and Trademark Office. In 1992, it also registered the service mark "Rainy Day." Defendant is a Maryland corporation operating a retail bookstore located in Easton, Maryland, under the name Rainy Day Books & Café. Defendant's bookstore has been in operation since September 2000.

Plaintiff alleges that in December 2000 it began receiving inquiries through its website about the "Rainy Day Books" store located in Easton, Maryland. Plaintiff's customers were inquiring whether it had a store in Maryland and whether gift certificates purchased at its bookstore could be redeemed in the Maryland bookstore. Upon investigation, Plaintiff discovered that Defendant had established an Internet website, *www.eastonrainyday-bookstore.com*, which incorporated multiple uses of its service marks. Counsel for Plaintiff contacted Defendant and requested that it stop using the service marks "Rainy Day Books" and "Rainy Day" in conjunction with its operations. Defendant responded that the bookstore had only been in business a few months and that a trademark search had been performed prior to its commencement of operations. Defendant later indicated that it would change its name to Easton's Rainy Day Books to eliminate confusion but refused Plaintiff's requests to cease use of "Rainy Day" or "Rainy Day Books."

## II. Legal Standard for Motions to Dismiss for Lack of Personal Jurisdiction

 The standard that governs a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is well established: plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988). When the court rules on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir.1998). A plaintiff may make this *prima facie* showing by demonstrating, by affidavit or other written materials, facts that, if true, would support the exercise of personal jurisdiction over defendant. *Id.*

 In considering whether plaintiff has made a *prima facie* showing of personal jurisdiction over defendant, the allegations in the complaint must be taken as true to the extent they are uncontroverted by defendant's affidavits. *Behagen v. Amateur Basketball Ass'n. of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984). When conflicting affidavits are presented, factual disputes are resolved in plaintiff's favor and plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party. *Id.* In order to defeat plaintiff's *prima facie* showing of jurisdiction, a defendant must present a compelling case demonstrating "that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings*, 149 F.3d at 1090 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

## III. Personal Jurisdiction

 Before a federal court can exercise personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the

defendant, and (2) whether the exercise of jurisdiction comports with due process. *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1209 (10th Cir.2000) (citing *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)). In federal question litigation, the statute upon which the action is based provides the rules for service of process on nonresident defendants. *Berthold Types Ltd. v. European Mikrograf Corp.,* 102 F.Supp.2d 928, 930 (N.D.Ill.2000).

▪ Because no federal statute authorizes nationwide service of process in this case, Defendant must still be shown to be amenable to service of process under Kansas' long-arm statute, K.S.A. 60–308(b). *Heating and Cooling Master Marketers Network, Inc. v. Contractor Success Group, Inc.,* 935 F.Supp. 1167, 1170 (D.Kan.1996) (citing *Omni Capital,* 484 U.S. at 108, 108 S.Ct. 404); Fed.R.Civ.P. 4(k)(1). Under Kansas law, the long-arm statute permits personal jurisdiction over a party to the extent allowed by the Constitution of the United States. *Volt Delta Resources, Inc. v. Devine,* 241 Kan. 775, 778, 740 P.2d 1089, 1092 (1987). Because the Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process, the court proceeds directly to the constitutional issue. *OMI Holdings,* 149 F.3d at 1090 (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.,* 17 F.3d 1302, 1305 (10th Cir.1994)).

▪ In federal question actions, personal jurisdiction flows from the Due Process Clause of the Fifth Amendment. *Peay,* 205 F.3d at 1210 (citing *Omni Capital,* 484 U.S. at 103–04, 108 S.Ct. 404). Nevertheless, the due process standards applied are the same as those in a Fourteenth Amendment analysis. *Packerware Corp. v. B & R Plastics, Inc.,* 15 F.Supp.2d 1074, 1077 (D.Kan.1998). The Due Pro-

cess Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant so long as there exist minimum contacts between the defendant and the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

▪ The "minimum contacts" standard may be met in two ways. A court may, consistent with due process, assert specific jurisdiction over a nonresident defendant if the defendant has "purposefully directed" its activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174. When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–6 & n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). However, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *OMI Holdings,* 149 F.3d at 1091.

▪ Once it has been established that a defendant's actions created sufficient minimum contacts, the court still must consider whether the exercise of personal jurisdiction over defendant would offend traditional notions of "fair play and substantial justice." *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). This inquiry requires a determination of whether the district court's exercise of personal

jurisdiction over defendant is reasonable in light of the circumstances surrounding the case. *Id.*

## A. Specific Jurisdiction

Since the exercise of specific personal jurisdiction over Defendant requires a less stringent showing of minimum contacts than is required for the exercise of general personal jurisdiction, the Court first directs its inquiry as to whether Defendant has the required minimum contacts necessary for exercising specific personal jurisdiction. Specific jurisdiction may be exercised when the cause of action arises out of the defendant's contacts with the forum.

The Tenth Circuit utilizes a twofold inquiry to determine whether it is appropriate to exercise specific personal jurisdiction over a nonresident defendant. *OMI Holdings,* 149 F.3d at 1091. First, the court must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *Id.* (citing *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559). Within this inquiry the court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174, and whether the plaintiff's claims arise out of or result from "actions by the defendant himself that create a substantial connection with the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotations omitted). In order to exercise specific jurisdiction, there must be "some act by which the defendant purposefully availed itself of the privilege of conducting business in the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). Second, if the defendant's actions create sufficient minimum contacts, the court

must consider whether the exercise of personal jurisdiction over defendant offends "traditional notions of fair play and substantial justice." *OMI Holdings,* 149 F.3d at 1091. This latter inquiry requires a determination of whether the exercise of personal jurisdiction over the defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. *Rambo,* 839 F.2d at 1419 n. 6.

Although the two components of the due process analysis are distinct, they both originated in the idea that a court cannot subject a defendant to its authority where the maintenance of the suit would offend "traditional notions of fair play and substantial justice." *OMI Holdings,* 149 F.3d at 1091 (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154). Moreover, the two components interplay so that "depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." *Id.* The weaker the plaintiff's showing on the minimum contacts prong, the less a defendant need to show in terms of unreasonableness to defeat jurisdiction. *OMI Holdings,* 149 F.3d at 1092 (citing *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 210 (1st Cir.1994)). Conversely, an especially strong showing of reasonableness may fortify a borderline showing of minimum contacts by plaintiff. *Id.*

### 1. Minimum Contacts

#### a. Purposeful Availment

The first step in the minimum contacts analysis requires a determination of whether Plaintiff has made a showing of some act by which the defendant purposefully availed itself of the privilege of conducting business in the jurisdiction of this court, thus invoking the benefits and protections of its laws. A defendant need not

be physically present or have physical contacts with the forum, as long as its efforts are "purposefully directed" toward forum residents. *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174. Purposeful availment may occur by actions or even a single act for which the defendant should reasonably anticipate being haled into court in the forum jurisdiction. *Id.* at 474, 105 S.Ct. 2174. This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of "random," "fortuitous," or "attenuated" contacts, *World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. 559, or the "unilateral activity of another party or third person." *Helicopteros Nacionales de Colombia*, 466 U.S. at 417, 104 S.Ct. 1868.

■■■ Plaintiff urges the Court to exercise specific personal jurisdiction over Defendant based upon Defendant's actions of knowingly ·operating an Internet website that allegedly infringes upon Plaintiff's registered service mark. For the reasons set forth below, the Court concludes that Defendant's activities demonstrate that it deliberately established minimum contacts with Kansas and purposefully availed itself of the privilege of conducting activities in this forum under the sliding scale analysis developed for Internet activities.

*i. Sliding Scale Test for Internet Activities*

One way a plaintiff can establish that a defendant has the requisite minimum contacts with the forum state is to use the Internet website sliding scale analysis set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123–24 (W.D.Pa. 1997). The Tenth Circuit appears to endorse this sliding scale analysis for determining the likelihood that personal juris-

diction may be constitutionally exercised over a nonresident defendant based upon the defendant's website activities.[1] *See Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296–97 (10th Cir. 1999).

As the Tenth Circuit observed in *Soma Medical*, the *Zippo* analysis categorizes Internet websites into three general categories along a sliding scale:

First, personal jurisdiction is established when "a defendant clearly does business over the Internet," such as entering into contracts which require the "knowing and repeated transmission of computer files over the Internet." Second, exercising personal jurisdiction is not appropriate when the Internet use involves "[a] passive Web site that does little more than make information available to those who are interested in it." Under these circumstances, "a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." Third, a middle category encompasses "interactive Web sites where a user can exchange information with the host computer." Whether the exercise of jurisdiction is appropriate depends upon "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."

*Id.* at 1296 (quoting *Zippo*, 952 F.Supp. at 1123–24).

Applying this framework and resolving all factual disputes in favor of Plaintiff, the Court finds that Defendant's internet website falls within the category of "clearly doing business over the Internet." Defendant's website provides information about the bookstore, upcoming events, store

---

1. The Court notes that the Tenth Circuit, in *Soma Medical*, 196 F.3d at 1296, appears to endorse the *Zippo* sliding scale test under a general personal jurisdiction analysis. The

Court determines that this test would also be instructive under a specific personal jurisdiction analysis.

picks, and book reviews. *Pl.'s Resp. (doc. 15), Ex. A.* It permits a user to subscribe to a mailing list or to obtain information regarding gift certificates. *Id.* Defendant's website also permits an Internet user to purchase books online by clicking on a link to BookSense, a third-party provider of online ordering services. *Def.'s Supplemental Aff. (doc. 26).* By clicking on the BookSense link, the Internet user can order merchandise online through a "virtual store." *Pl.'s Resp. (doc. 15), p. 3.* Consumers can search for specific products or browse through categories; see suggested purchase recommendations specified by Defendant; place items in virtual shopping carts; view product descriptions, price and pictures; purchase products through "checkout" by providing credit card and shipping information; and track the status of orders. *Id.*

Bookstores that offer the Booksense link on their websites receive credit for the sale, less wholesaler costs for the books, commissions charged by BookSense, and credit card and bank processing fees. *Def.'s Supplemental Aff. (doc. 26), Ex. A.* Each individual store using BookSense has the ability to discount or markup books across a broad category of titles. *Id.* Participating BookSense bookstores receive orders through their BookSense.com local administration website. *Id.* By default, all orders are filled by wholesalers except in certain cases, such as when the wholesalers are out of stock for that particular title or when a customer has requested to pick up books in the store. *Id.*

Once a customer places an order through the BookSense link on Defendant's website, the customer receives an e-mail confirming the order. *Pl.'s Resp. (doc. 15), Ex. C. (See copy attached as an Exhibit to this Memorandum and Order).* The confirmation e-mail subject line is entitled "Easton Rainy Day Bookstore order confirmation" and thanks the customer for

shopping at Easton Rainy Day Bookstore. *Id.* The e-mail provides a confirmation number, the customer's shipping address, the shipping method, a description of the items ordered, price information, and the customer's billing information, including credit card information. *Id.* The e-mail also contains the Easton, Maryland, address of Defendant's bookstore and a website address of "eastonrainydaybooks.booksense.com." *Id.* Once the book order ships, the customer receives another e-mail from Defendant confirming shipment of the order. *Pl.'s Resp. (doc. 15), Ex. D.* This e-mail also thanks the customer for shopping at Easton Rainy Day Bookstore and lists Defendant's Easton, Maryland, address. *Id.*

Books ordered through the BookSense link are shipped in a box with a return-address label that includes the bookstore's name and contact information. *Def.'s Supplemental Aff. (doc. 26), Ex. A.* The packing list bears the same information. *Id.*

The Court concludes that Defendant purposefully and deliberately set up and operated a website with a high level of interactivity, which encourages customers accessing its website to order books. Even though the ordering process is accomplished through BookSense, a third-party book ordering service, Defendant receives economic benefits from the book sales made through the BookSense link. Furthermore, Defendant's e-mail confirmations, packing list, and shipping label all give the appearance that the book is being purchased from Defendant. As such, Defendant's website falls within the sliding scale category of websites that allows a defendant to "do business" and "enter into contracts with residents of foreign jurisdiction over the Internet". As Plaintiff has established that Defendant's website constitutes a commercial website, Plaintiff has demonstrated that it purposefully availed

itself of the privilege of doing business in this jurisdiction.

The Court notes that its holding is consistent with the decisions of other courts, which have exercised specific personal jurisdiction over a defendant based upon its maintenance of a website that allowed Internet users in the forum state to purchase items through defendant's website. *See Panavision Int'l., L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir.1998); *American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.,* 106 F.Supp.2d 895 (N.D.Tex. 2000); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.,* 96 F.Supp.2d 824 (N.D.Ill. 2000); *Sports Auth. Mich., Inc. v. Justballs, Inc.,* 97 F.Supp.2d 806 (E.D.Mich. 2000); *Stomp, Inc. v. NeatO, LLC,* 61 F.Supp.2d 1074 (C.D.Cal.1999).

Defendant argues that Plaintiff is attempting to manufacture the personal jurisdiction minimum contacts between Defendant and this jurisdiction by directing family and acquaintances to access Defendant's website and purchase books. The Court disagrees. The pertinent inquiry in the personal jurisdiction analysis is whether Defendant, by its own actions, has purposefully availed itself of the privilege of conducting business in this jurisdiction so that it should reasonable anticipate being haled into this forum. In this case, it was Defendant's own actions of maintaining a commercial website with the knowledge that it allegedly infringed upon Plaintiff's service mark and that Plaintiff's primary bookstore business operated in Kansas that created the minimum contacts with the forum. Because the inquiry is under specific personal jurisdiction, the individual book orders placed by Kansas residents at Plaintiff's behest are not determinative. Instead, the focus of the inquiry is on Defendant's actions in setting up and maintaining a commercial website, which targeted Kansas residents by its alleged use of Plaintiff's service marks. Plaintiff's

activities in obtaining evidence that a Kansas resident could purchase books from Defendant's website do not constitute the manufacture of the contacts necessary for the Court to exercise personal jurisdiction. Proof of an actual book sale to a Kansas resident from Defendant's website merely supports Plaintiff's contention that Defendant's website is a commercial website accessible by Kansas residents. The Court, in its specific personal jurisdiction analysis, concludes that Defendant, by its own actions, has purposefully availed itself of the privilege of conducting business in this jurisdiction so that it should reasonable anticipate being haled into this court.

Asserting personal jurisdiction in this case is consistent with due process jurisprudence. By intentionally maintaining a commercial website that allegedly infringes upon a Kansas bookstore's service mark and through which it markets and sells books, Defendant has reached out to avail itself of the privileges and benefits of the laws of this jurisdiction. Defendant's website essentially targets residents of Kansas by its alleged use of Plaintiff's service mark with the knowledge that Plaintiff's bookstore and a significant number of its customers are located in Kansas. Defendant's alleged intentional infringement of Plaintiff's service mark on its website, from which Kansas residents can purchase books, combined with its knowledge that Plaintiff's main retail bookstore is located in Kansas, puts Defendant on notice that it should reasonably anticipate being haled into this court. Furthermore, Defendant, after being informed by Plaintiff that it was using a service mark registered by Plaintiff on its website, could have reasonably foreseen that its website could attract Plaintiff's customers believing they were patronizing Plaintiff's business.

Although the actual number of bona fide sales of books to Kansas residents or-

dering through Defendant's website to date is unknown, the critical inquiry in determining whether there was a purposeful availment of the forum jurisdiction is the quality, not merely the quantity, of the contacts. Focusing on the quantity of contacts with the forum jurisdiction is more appropriate under a general personal jurisdiction analysis. By engaging in Internet commerce with Kansas residents through its website, with the knowledge the website allegedly infringes upon Plaintiff's service mark, Defendant has established the minimum contacts that are a prerequisite to the exercise of specific personal jurisdiction over it.

Accordingly, the Court finds that Plaintiff has met its *prima facie* burden of demonstrating that Defendant has purposefully availed itself of the privileges of conducting business in this jurisdiction, thereby satisfying the "minimum contacts" component of the due process analysis.

### b. Plaintiff's Claims Arise out of Defendant's Contacts

Next, the Court must determine whether a nexus exists between Defendant's forum-related contacts and Plaintiff's cause of action. *Asahi,* 480 U.S. at 109, 107 S.Ct. 1026. This requires a showing that the instant litigation results from Plaintiff's alleged injuries that arise out of or relate to Defendant's contacts with this jurisdiction. *Id.*

In this case, Defendant's contacts with Kansas arose when Defendant continued to maintain a website allegedly incorporating Plaintiff's service mark from which Kansas residents could purchase books after it was informed of Defendant's service mark registration. Plaintiff's Petition alleges that Defendants' business and website infringed upon its service mark in violation of federal and state trademark law. The Court therefore holds that Plaintiff's

claims arise out of Defendant's forum-related activity.

### 2. Reasonableness of Exercising Personal Jurisdiction Over Defendant

▆ Once it has been established that a defendant's action created sufficient minimum contacts, the court still must consider whether the exercise of personal jurisdiction over the defendant would offend traditional notions of "fair play and substantial justice." *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. 154). This inquiry requires a determination of whether the district court's exercise of personal jurisdiction over the defendant is reasonable in light of the circumstances surrounding the case. *Id.* In determining whether the exercise of jurisdiction is so unreasonable as to violate "fair play and substantial justice," the court considers the following factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559.

▆ An examination of these factors shows that the exercise of jurisdiction in this case is not unconstitutionally unreasonable. Defendant's burden in litigating in this forum is a factor in the reasonableness assessment; however, unless the inconvenience is so great as to constitute a deprivation of due process, this burden would not overcome justification for the exercise of jurisdiction. In this era of Internet communications, faxes, telecommunications, and relatively inexpensive travel, requiring Defendant to litigate in

this jurisdiction is not constitutionally unreasonable. In addition, this Court has a strong interest in adjudicating disputes that involve the alleged infringement of a Kansas corporation's service mark. Litigating in this forum certainly would be more convenient for Plaintiff but does not appear to be advantageous in terms of a forum providing a more efficient resolution of the action. Evidence and witnesses would be located in both Kansas and Maryland. Finally, the shared interest in furthering fundamental substantive social policies factor does not appear to be a compelling factor in deciding whether the exercise of personal jurisdiction over defendant is reasonable. On the whole, the Court concludes that exercise of jurisdiction over Defendant in this case is not unconstitutionally unreasonable.

In conclusion, the Court concludes that its exercise of specific personal jurisdiction over Defendant comports with the requirements of due process. Accordingly, Defendant's Motion to Dismiss Plaintiff's Petition is denied.

## IV. Sanctions

Related to Defendant's Motion to Dismiss, Plaintiff has filed its Motion for Rule 11 Sanctions (doc. 13) based upon the grounds that Defendant's affidavit submitted in support of its Motion to Dismiss contains statement that cannot be supported by the evidence. Plaintiff moves the Court to impose sanctions on Defendant for its statements that its website is a passive Internet website, the website was not interactive, no products could be ordered from the store through the site, and the website was no longer in operation. Plaintiff contends these statements violate Rule 11(b)(3).

Federal Rule of Civil Procedure 11(b)(3) provides that when an attorney or unrepresented party presents pleadings, written motions, or other papers to the court, the person is certifying that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

Based upon the evidence submitted with the pleadings, the Court cannot clearly determine that Defendant has committed a Rule 11(b)(3) violation although it appears that it has. The Court therefore declines to rule on Plaintiff's Motion for Rule 11 Sanctions (doc. 13) at this time; however, with 15 days of this order, both parties are ordered to file supplemental affidavits with supporting documentation on the issue of the status and nature of Defendant's web site during the entire period of time from August 15, 2000 until August 15, 2001 with descriptions and dates of any changes to the web site during that period.

IT IS THEREFORE ORDERED BY THE COURT THAT Defendant's Motion to Dismiss Plaintiff's Petition (doc. 3) is denied.

IT IS FURTHER ORDERED THAT Defendant's Motion to Stay Pending Resolution of Defendant's Motion to Dismiss Plaintiff's Petition (doc. 23) is denied as moot.

IT IS SO ORDERED.