Filed 8/26/20
See Dissenting Opinion

CERTIFIED FOR PARTIAL PUBLICATION[1]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHERYL THURSTON et al., | |
| Plaintiffs and Appellants, | E072909 |
| v. | (Super.Ct.No. CIVDS1831538) |
| FAIRFIELD COLLECTIBLES OF GEORGIA, LLC, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. Michael A. Sachs, Judge. Reversed with directions.

Pacific Trial Attorneys, Scott J. Ferrell and Victoria C. Knowles for Plaintiffs and Appellants.

Dunbar & Associates, Kevin T. Dunbar, and Matt D. Derossi for Defendant and Respondent.

---

[1]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III and IV.

1

Plaintiffs Cheryl Thurston and Luis Licea (collectively Thurston) are Californians. Defendant Fairfield Collectibles of Georgia, LLC (Fairfield) is a Georgia limited liability company. It vends its wares through catalogs and through its website. In this action, Thurston alleges that Fairfield's website is not fully accessible by the blind and the visually impaired, in violation of the Unruh Civil Rights Act. (Civ. Code, § 51 et seq.)

The trial court granted Fairfield's motion to quash service of summons. It ruled that California could not obtain personal jurisdiction over Fairfield, because Fairfield did not have sufficient minimum contacts with California.

We will reverse. The evidence showed that Fairfield makes some eight to ten percent of its sales to Californians. Hence, its website is the equivalent of a physical store in California. Moreover, this case arises out of the operation of that website. The trial court therefore can properly exercise personal jurisdiction over Fairfield.

I

FACTUAL AND PROCEDURAL BACKGROUND

The following facts were shown by the evidence offered in support of and in opposition to the motion to quash.

Fairfield is the largest retail seller of diecast models via catalogs and the Internet in America. It is a Georgia limited liability company. Its principal place of business is in Georgia. It has never had an office in California. It does not employ any resident of California.

2

Fairfield's only contact with California is that its sales through its catalogs and its website include some sales to Californians. Fairfield sells to wholesalers as well as direct to consumers. It makes about eight percent of its total sales to Californians. Out of its sales to consumers only, it makes a little over ten percent to Californians. Fairfield's total sales to California addresses are about $320,000 to $375,000 a year.

## II

## PROCEDURAL BACKGROUND

Thurston filed this action in 2018. She asserted a single cause of action, for violation of the Unruh Civil Rights Act.

She alleged that she was blind; that she needed a "screen reader" to use the Internet; and that Fairfield's website had "access barriers," which interfered with the use of a screen reader and thus prevented blind people from having "full and equal access" to the website. Among other things, the website did not comply with the most recent "Web Content Accessibility Guidelines" (Guidelines) promulgated by the World Wide Web Consortium (W3C).

Thurston also alleged that she is acting as a "tester," meaning that she visits websites to determine whether they comply with antidiscrimination laws. Nevertheless, she "genuinely want[s] to avail [herself] of [Fairfield]'s goods and services as offered on [Fairfield]'s website." She had made "several attempts to use and navigate [Fairfield's w]ebsite," but had been unable to do so due to its "accessibility barriers." These barriers had "deterred [her] from purchasing [Fairfield's] products . . . ."

3

Fairfield promptly filed a motion to quash, based on lack of personal jurisdiction. After hearing argument, the trial court granted the motion. It commented, in part, that Fairfield "did not direct its website toward California."

### III

### APPEALABILITY

Preliminarily, Fairfield contends that this appeal is taken from a nonappealable order.

"[A]n order granting a motion to quash service of summons" is appealable. (Code Civ. Proc., § 904.1, subd. (a)(3).)

The particular order appealed from here is an unsigned minute order. An unsigned minute order granting a motion to quash is appealable because it is final; it contemplates no further action. (*Gould, Inc. v. Health Sciences, Inc.* (1976) 54 Cal.App.3d 687, 690, fn. 1.) This situation "may be thus distinguished from those where the minute order directs the entry of nonsuit or dismissal and appeal may only properly be taken from the resultant judgment, rather than the minute order." (*Ibid*.; see also *Walton v. Mueller* (2009) 180 Cal.App.4th 161, 167 [unsigned minute order denying motion to enforce settlement was appealable]; *In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1410 [unsigned minute order denying application to unseal records was appealable; "[a]n unsigned minute order can form the basis of an appeal, unless it specifically recites that a formal order is to be prepared"].)

Fairfield relies on *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894. *Alan* involved an order denying class certification, not an order granting a motion to quash. (*Id*. at p. 898.) And *Alan* merely stated, "The general rule is that a statement or memorandum of decision is not appealable. [Citations.]" (*Id*. at p. 901.) In our case, there was no statement of decision. *Alan* went on to hold that the minute order in that case *was* appealable. (*Id*. at p. 902.)

In any event, after Fairfield filed its respondent's brief, the trial court, on Thurston's motion, signed and entered a formal order granting the motion to quash.[1] Thus, even assuming the minute order was not appealable, Thurston's notice of appeal was taken prematurely but validly from the formal order. (Cal. Rules of Court, rule 8.104(d)(2).)

IV

MOOTNESS

Fairfield also contends that this action is moot because, in September 2018, the federal Department of Justice (Department) officially took the position that noncompliance with the Guidelines does not necessarily establish noncompliance with the Americans with Disabilities Act (ADA).

---

[1] The order recited that it was effective as of April 18, 2019, the date of the minute order, "nunc pro tunc." We have no problem with that. But we do have a problem with the fact that the trial court hand-dated it April 18, 2019, and worse, the clerk back-dated the file stamp to April 18, 2019. This essentially falsifies the record. Saying "nunc pro tunc" in the order was enough.

California's Unruh Civil Rights Act provides, "A violation of the right of any individual under the federal [ADA] shall also constitute a violation of this section." (Civ. Code, § 51, subd. (f).)

Thurston's complaint alleges that Fairfield's website fails to comply with the Guidelines. Assuming the Department's position is binding on this court — an issue that Fairfield does not even bother to discuss — it only means that noncompliance with the Guidelines does not *necessarily* establish noncompliance with the ADA; however it *can* in particular cases.

Moreover, this is not Thurston's only relevant allegation. She also alleges, more generally, that the website has barriers to access by the visually impaired. These barriers "include, but are not limited to" particular barriers that are listed in the complaint. She alleges that persons who use a screen reader are "hindered from effectively browsing" the website. Indeed, the website is "inaccessible" to the visually impaired. This goes beyond a mere claim of noncompliance with the Guidelines.

In a jargon-heavy passage, Fairfield also seems to argue that its site is in compliance with the Guidelines. Given the procedural posture of this appeal, there is no evidence of this in the record. Fairfield cites a web page that supposedly proves this, but it has not requested judicial notice of the page; indeed, the page does not appear to be judicially noticeable.

We therefore conclude that Fairfield has not shown that the underlying action is moot.

6

V

SPECIFIC JURISDICTION BASED ON INTERNET SALES

"A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.)

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. [Citation.] Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' [Citation.]" (*Walden v. Fiore* (2014) 571 U.S. 277, 283.)

There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction. [Citation.]" (*Bristol-Myers Squibb Co. v. Superior Court* (2017) ___ U.S. ___, ___ [137 S.Ct. 1773, 1779-1780].)

Thurston disclaims any reliance on general jurisdiction. Hence, we discuss only specific jurisdiction.

"'When determining whether specific jurisdiction exists, courts consider the "'relationship among the defendant, the forum, and the litigation.'"' [Citation.] A court may exercise specific jurisdiction over a nonresident defendant only if: (1) "the defendant has purposefully availed himself or herself of forum benefits" [citation]; (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the

forum'" [citation]; and (3) "'the assertion of personal jurisdiction would comport with "fair play and substantial justice"'" [citation]' [Citation.]" (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062; accord, *In re Boon Global Limited* (9th Cir. 2019) 923 F.3d 643, 651.)

"'When a defendant moves to quash service of process' for lack of specific jurisdiction, 'the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction.' [Citation.] 'If the plaintiff meets this initial burden, then the defendant has the burden of demonstrating "that the exercise of jurisdiction would be unreasonable."' [Citation.]" (*Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1062.)

"When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. [Citation.] When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449.)

A.    *Purposeful Availment*.

Due process requires purposeful availment because it "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." (*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297.) "When a corporation 'purposefully avails itself of the privilege of

conducting activities within the forum State,' [citation], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." (*Ibid*.)

"To determine whether a Web site is sufficient to establish purposeful availment, we first look to [a] sliding scale analysis . . . . [Citation.] 'At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. [Citation.] At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. [Citation.] The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.' [Citation.]" (*Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1063.)[2]

---

[2] *Snowney*'s "sliding scale" approach must not be confused with a different "sliding scale" approach set forth in *Bristol-Myers Squibb Co. v. Superior Court* (2016) 1 Cal.5th 783.

"'Some courts have held that sufficient minimum contacts are established, and the defendant is "doing business" over the Internet, where the defendant's website is capable of accepting and does accept purchase orders from residents of the forum state.' [Citation.] Other courts have suggested that '"something more"' is necessary, such as '"deliberate action" within the forum state in the form of transactions between the defendant and residents of the forum or conduct of the defendant purposefully directed at residents of the forum state.' [Citations.] Other courts 'have criticized . . . emphasis on website interactivity' [citation] and focus instead on 'traditional due process principles' [citation], asking whether the site expressly targets 'residents of the forum state' [citation]. According to these courts, 'Website interactivity is important only insofar as it reflects commercial activity, and then only insofar as that commercial activity demonstrates purposeful targeting of residents of the forum state or purposeful availment of the benefits or privileges of the forum state.' [Citations.]" (*Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1064.)

---

*Bristol-Myers* endorsed "a sliding scale approach to specific jurisdiction in which . . . 'the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim.' [Citation.]" (*Bristol-Myers, supra*, 1 Cal.5th at p. 806.) The United States Supreme Court reversed *Bristol-Myers* and disapproved this "sliding scale" approach. (*Bristol-Myers Squibb Co. v. Superior Court*, *supra*, 137 S.Ct. 1773, 1781-1782.)

The "sliding scale" in *Snowney* is specific to websites. It does not look to how wide-ranging the defendant's forum contacts are; it looks instead to how interactive and commercial the website is. We conclude that it is still good law.

10

In *Snowney* itself, a California resident filed a putative class action against Nevada hotel owners, alleging that they accepted reservations without disclosing an energy surcharge. (*Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1059.)

The Supreme Court held that the trial court had specific jurisdiction. (*Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1062.) With regard to purposeful availment, it explained: "By touting the proximity of their hotels to California and providing driving directions from California to their hotels, defendants' Web site specifically targeted residents of California. [Citation.] Defendants also concede that many of their patrons come from California and that some of these patrons undoubtedly made reservations using their Web site. As such, defendants have purposefully derived a benefit from their Internet activities in California [citation], and have established a substantial connection with California through their Web site [citation]. In doing so, defendants have 'purposefully availed [themselves] of the privilege of conducting business in' California 'via the Internet.' [Citation.]" (*Id*. at pp. 1064-1065.)

Admittedly, the court went on to state: "In any event, even assuming that defendants' Web site, by itself, is not sufficient to establish purposeful availment, the site in conjunction with defendants' other contacts with California undoubtedly is." (*Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1065.) It then relied additionally on the defendants' maintenance of a toll-free number and on their "extensive[]" advertising, by direct mail, billboards, newspapers, radio, and television in California. (*Ibid*.) But this was only an alternative holding. As such, it does not detract

11

from the court's first holding that there was purposeful availment even without regard to these additional factors. (See *Southern Cal. Ch. of Associated Builders etc. Com. v. California Apprenticeship Council* (1992) 4 Cal.4th 422, 431, fn. 3 [alternative holdings are equally valid].)

Here, much as in *Snowney*, many of Fairfield's customers are California residents. And all of these — not just some — necessarily purchased through either Fairfield's website or its catalog. On the other hand, unlike in *Snowney*, there is no evidence that Fairfield's website "targeted" Californians (any more than residents of other states, or indeed other countries).

The question, then, is whether this distinction makes a difference. *As You Sow v. Crawford Laboratories, Inc.* (1996) 50 Cal.App.4th 1859 indicates that it does not. There, a nonprofit organization sued an Illinois paint manufacturer, alleging that the manufacturer had made sales to California residents without providing warnings required by Proposition 65. (*Id*. at pp. 1863-1864.) Over six years, the manufacturer had made 16 sales to California distributors. These sales were never more than one percent of its annual sales. (*Id*. at p. 1864.)

The appellate court held that this was sufficient to show purposeful availment. (*As You Sow v. Crawford Laboratories, Inc.*, *supra*, 50 Cal.App.4th at p. 1869.) It explained: "'[A]n enterprise obtains the benefits and protection of our laws if as a matter of commercial reality it has engaged in economic activity within this state . . . . [Citation.]' [Citation.]" (*Id*. at p. 1870.) "Instead of focusing on the quantity of activity, we must

12

look to see if the defendant purposefully availed itself of the benefits and protections of California law to make it reasonably foreseeable to be 'haled into the court in the forum State' to defend itself in an action relating to its products.  [Citation.]  When a manufacturer makes a direct effort to serve the market for its product in the forum state, the requisite level of foreseeability is met.  [Citation.]" (*Ibid*.)

To summarize, then, under California case law, making a substantial number of sales of goods or services to California residents via one's own website constitutes purposeful availment.  The vast majority of federal cases are in accord.  (E.g., *Rovio Entertainment, Ltd. v. Allstar Vending, Inc.* (S.D.N.Y. 2015) 97 F.Supp.3d 536, 542; *Advanced Skin & Hair, Inc. v. Bancroft* (C.D. Cal. 2012) 858 F.Supp.2d 1084, 1090; *Rainy Day Books, Inc. v. Rainy Day Books & Cafe, L.L.C.* (D. Kan. 2002) 186 F.Supp.2d 1158, 1163-1165; *American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.* (N.D. Tex. 2000) 106 F.Supp.2d 895, 900-901; *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* (W.D. Pa. 1997) 952 F.Supp. 1119, 1125-1127; see also *Gorman v. Ameritrade Holding Corp.* (D.C. Cir. 2002) 293 F.3d 506, 512–513 ["continuous and systematic" website sales to state residents supports *general* jurisdiction]; contra, *Fidrych v. Marriott International, Inc.* (4th Cir. 2020) 952 F.3d 124, 141-143.)

Admittedly, the sales must be substantial; they are not enough if they are only "random, isolated, or fortuitous . . . ."  (See *Keeton v. Hustler Magazine, Inc.* (1984) 465 U.S. 770, 774.)  But even assuming *As You Sow* was erroneous in predicating jurisdiction on less than one percent of sales, here Fairfield made eight percent of its sales to residents

13

of California.  These sales totaled some $320,000 to $375,000 a year.  That is the equivalent of having a brick-and-mortar store in California — a "virtual store."  (See *Stomp, Inc. v. NeatO, LLC* (C.D. Cal. 1999) 61 F.Supp.2d 1074, 1078, fn. 7.)

Given that volume of transactions, Fairfield was on notice that it could be sued in California.  Certainly if a California resident were injured by a defective diecast model purchased from Fairfield's website, that resident could sue Fairfield in California.  The benefit of making substantial sales to California consumers comes at the cost of potentially being sued in California.  If Fairfield finds that too burdensome, it can simply choose not to sell to Californians and to post a notice to that effect on its website.

In the words of *Snowney*, Fairfield "'clearly does business over the Internet.  [It] enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet . . . .'  [Citation]"  (*Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1063.)  Hence , "'personal jurisdiction is proper.'"  (*Ibid*.)

Finally, even assuming that there must be some evidence that, in addition to making substantial website sales to Californians, a defendant has "targeted" Californians, there was such evidence here.  Fairfield sells not only online, but also through catalogs.  It sends out approximately 1.4 million catalogs a year.  Howard Fox, the President of Fairfield, did not know how many of these were sent to California; he explained, "It's based on who signs up for the catalog."  Nevertheless, the only reasonable inference is that Fairfield sent a substantial number of catalogs to residents of California.  This shows

that it made a deliberate decision to sell to California residents, not only through its website, but also through its catalogs.

We therefore conclude that Fairfield has purposefully availed itself of the benefits of the California market.

B.      *Nature of the Controversy*.

We also conclude that the controversy arises out of Fairfield's contacts with California, under any standard.  (See *David L. v. Superior Court* (2018) 29 Cal.App.5th 359, 374, fn. 8, and cases cited.)  Those contacts consist of maintaining a virtual store on the Internet that makes substantial sales to Californians.  Thurston alleges that it maintains that virtual store in an unlawfully discriminatory manner, so that she, a Californian, is prevented from browsing and making purchases.  Admittedly, unlike the purchaser injured by a defective Fairfield product, whom we hypothesized in part V.A, *ante*, Thurston never actually made a purchase from the website.  But this is a distinction without a difference.  Just as Fairfield's website is like a brick-and-mortar store, Thurston is like a mobility-impaired person who cannot get up the steps to enter that store and make a purchase.  It is hard to imagine a closer nexus between a contact and a controversy.

C.      *Reasonableness*.

We turn to whether "an exercise of jurisdiction would be reasonable and fair, consistent with notions of fair play and substantial justice.  [Citations.]"  (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 115.)

15

Because Thurston established minimum contacts (see parts V.A and V.B, *ante*), it was Fairfield's burden to show that the exercise of jurisdiction would be unreasonable. (*Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1062.)  It made no effort to do so.  It introduced no evidence on this issue.  We therefore conclude that the exercise of jurisdiction by California in this case would not be unreasonable.  As already discussed in part V.A, *ante*, if Fairfield finds it too burdensome to be sued in California, it can simply decline to sell to Californians.

In its brief, Fairfield did not argue that the exercise of jurisdiction would be unreasonable.  At oral argument, however, it complained that it would be ruinous for it to have to comply with not just California law, but the law of all 50 states.  We are not holding, however, that California law (i.e., the Unruh Civil Rights Act) applies.  The issue of personal jurisdiction is distinct from the issue of choice of law.  (E.g., *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 806-823 [Kansas had personal jurisdiction over plaintiff class members out of state but could not constitutionally apply its law].)  As the United States Supreme Court stated in *Keeton v. Hustler Magazine, Inc.* , *supra*, 465 U.S. 770, a choice of law question "presents itself in the course of litigation only after jurisdiction over [the defendant] is established, and we do not think that such choice-of-law concerns should complicate or distort the jurisdictional inquiry."  (*Id*. at p. 778.)

In sum, then, the trial court could and should have exercised personal jurisdiction over Fairfield.

## VI

## DISPOSITION

The order appealed from is reversed.  The trial court is directed to deny the motion to quash.  Thurston is awarded costs on appeal against Fairfield.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
                                                                P. J.


I concur:

CODRINGTON
                        J.

[*Thurston et al.*, E072909]

MENETREZ, J., Dissenting.

Fairfield Collectibles of Georgia, LLC (Fairfield) is a Georgia limited liability company that sells diecast collectibles. Fairfield regularly makes sales to California residents. It is possible that Fairfield also mails copies of its catalogue to some California residents, upon request. Fairfield has no other contacts with California.

Fairfield operates a website, through which customers may purchase Fairfield's products. Fairfield's website does not target California residents, and the record contains neither allegations nor evidence that Fairfield's other advertising targets California residents.

Plaintiffs are California residents who are suing Fairfield in California for violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.) because Fairfield's website allegedly is not sufficiently accessible to the visually impaired. Plaintiffs have never bought anything from Fairfield. Plaintiffs have never received or requested a copy of Fairfield's catalogue.

The trial court granted Fairfield's motion to quash service of summons based on lack of personal jurisdiction. I believe the trial court's ruling was correct.

"Personal jurisdiction may be either general or specific." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 (*Vons*).) Plaintiffs do not contend that Fairfield is subject to general jurisdiction in California, so only specific jurisdiction is at issue.

1

A nonresident defendant is subject to specific jurisdiction only if "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum,'" where those contacts consist of "activities" that the defendant "has 'purposefully directed' . . . at forum residents." (*Vons*, *supra*, 14 Cal.4th at p. 446.) Plaintiffs' lawsuit is not related to and does not arise out of anything that Fairfield purposefully directed at California residents. Plaintiffs do not allege that they have been injured by a diecast collectible they purchased from Fairfield—plaintiffs have never purchased anything from Fairfield. Plaintiffs also do not allege that they have been injured by Fairfield's catalogue— plaintiffs have never requested, been sent, or received Fairfield's catalogue. Because selling products to California residents and (possibly) mailing catalogues to California residents are the only activities that Fairfield has ever purposefully directed at California residents, it follows that plaintiffs' suit is not related to and does not arise from Fairfield's contacts with California.

*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054 (*Snowney*) is instructive. In *Snowney*, the nonresident defendants' website "specifically targeted residents of California" by "touting the proximity of [the defendants'] hotels to California and providing driving directions from California to their hotels." (*Id.* at p. 1064.) As a result, "many of their patrons come from California" and "some of these patrons undoubtedly made reservations using their Web site," so the defendants had "*purposefully* derived a benefit from their Internet activities in California." (*Id.* at pp. 1064-1065, italics added.) The instant case is completely different, because

2

Fairfield's website does not target residents of California. The Fairfield website is no more directed at California residents than at anyone else on Earth who speaks English and has access to the Internet. Fairfield cannot, without more, be subjected to personal jurisdiction in California for alleged shortcomings of its website, because Fairfield's website is not directed at California.

*As You Sow v. Crawford Laboratories, Inc.* (1996) 50 Cal.App.4th 1859 (*As You Sow*) is distinguishable. In *As You Sow*, the defendant sold its products to California distributors but allegedly failed to comply with the warning requirements of Proposition 65 with respect to those sales. (*As You Sow*, *supra*, at pp. 1863-1864.) The defendant was accordingly subject to specific personal jurisdiction in California in a suit for those alleged violations of Proposition 65—the violations were related to and arose out of the defendant's activities that were purposefully directed at California, namely, the defendant's sales of its products to California residents. (*As You Sow*, at pp. 1869-1872.) Again, the facts of the instant case are completely different. Plaintiffs' claims do not concern any conduct by Fairfield that is directed at California—plaintiffs' claims do not concern Fairfield's sales to California residents or Fairfield's (possible) mailing of catalogues to California residents, and that is the only conduct of Fairfield's that is directed at California.

Plaintiffs focus on the ratio of Fairfield's California sales to Fairfield's global sales, and the majority opinion finds the issue significant as well. (Maj. opn. *ante*, pp. 13-14.) I believe the issue is a red herring. On the one hand, if Fairfield sold only

3

one diecast collectible to a California resident and the resident was injured by that product, then the resident could subject Fairfield to specific jurisdiction in California for redress for that injury, assuming the reasonableness requirement was also met. The low volume of sales would not undermine the showing of purposeful availment and relatedness. On the other hand, even if a very large proportion of Fairfield's sales (say 50 percent) were to California residents, that would not change the fact that Fairfield cannot be subjected to specific jurisdiction in California for the website defects alleged in this case. Similarly, a large proportion of sales in California would not mean that Fairfield could be subjected to specific jurisdiction in California in a suit for wage and hour or workplace safety violations at its headquarters in Georgia. Again, specific personal jurisdiction exists only if "the 'controversy is related to or "arises out of"'" the defendant's "activities" that are "'purposefully directed' . . . at forum residents." (*Vons*, *supra*, 14 Cal.4th at p. 446.) Plaintiffs' claims about the flaws in Fairfield's website are not related to and do not arise out of Fairfield's sales to California residents, no matter how voluminous those sales are.

The majority opinion reasons that because "Fairfield's website is like a brick-and-mortar store," plaintiffs are "like a mobility-impaired person who cannot get up the steps to enter that store and make a purchase." (Maj. opn. *ante*, at p. 15.) I am not persuaded, because Fairfield's website is not like a brick-and-mortar store *in California*.

If Fairfield operated a brick-and-mortar store in California, that would be conduct purposefully directed at California residents. If Fairfield operated that California store in

4

a manner that made it unlawfully inaccessible to disabled would-be customers, then Fairfield would be subject to personal jurisdiction in California in a suit by the affected individuals. But if Fairfield operates a brick-and-mortar store *in Georgia* and in no way targets California, and a disabled California resident traveling through Georgia is unable to enter the store because the store is operated in an unlawfully inaccessible manner, then Fairfield would not be subject to personal jurisdiction *in California* in a suit by that California resident. Moreover, it would make no difference if a significant percentage of Fairfield's sales at its Georgia store were to California residents traveling through Georgia (again assuming that Fairfield did not target California residents).

The facts of this case are analogous—some California residents happened upon an out-of-state website that does not target California, believed it to be unlawfully inaccessible, and are trying to subject the website operator to suit in California. The law of specific personal jurisdiction does not allow that—plaintiffs' claims are not related to and do not arise from any conduct by Fairfield that is purposefully directed at California residents.

For all of the foregoing reasons, I would affirm the judgment of dismissal. I therefore respectfully dissent.

MENETREZ         

J.

5