**Affirmed and Opinion filed August 29, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00844-CV

**STUBHUB, INC., Appellant**

**V.**

**WESLEY T. BALL, Appellee**

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2022-26586**

## O P I N I O N

The dispositive issue in this appeal from the denial of a motion to compel arbitration is whether StubHub, Inc. conclusively established that Wesley T. Ball, a user of StubHub's online ticket marketplace, assented to StubHub's online user arbitration agreement. On the present record, we conclude that StubHub's evidence falls short of the quantum required to prove the existence of a valid arbitration agreement. Therefore, the trial court did not err in denying StubHub's motion, and we affirm the trial court's order.

## Background

StubHub operates an online global marketplace where users offer, sell, and buy tickets from each other. In 2021, Ball purchased two tickets to a Broadway musical using StubHub's online marketplace. He and his daughter arrived at the venue to discover the seats shown on his tickets already occupied by others with identical tickets. Ball sued StubHub for various violations of the Texas Deceptive Trade Practices Act ("DTPA").

StubHub filed a motion to compel arbitration. StubHub asserted that its user agreement ("User Agreement") in effect when Ball purchased the tickets in September 2021 contained an arbitration provision, which applied to Ball's claims. StubHub argued that Ball manifested his assent to the arbitration terms in the User Agreement because he was "required to affirmatively accept" the agreement "(by clicking a button) in order to register and create his account."

StubHub supported its motion to compel arbitration with the unsworn declaration of Amy Monroe, its Supervisor of Customer Experience. Monroe described the account creation process:

> 5. . . . In order to purchase an item and create a StubHub account, a potential user must agree to comply with the terms of the User Agreement.
>
> 6. Creating a StubHub account is initiated by the prospective user accessing StubHub's Site (as defined in the User Agreement). Once on StubHub's Site, the prospective user is presented with the options to "sign in" or "create account." The "sign in" option is available only to previously-registered users. When a prospective user clicks on the "create account" link, he or she is taken to a webpage containing the create account form. The prospective user must complete and submit the create account form to become a StubHub user. The prospective user is required to provide a first and last name, phone number, and email address.

2

7.    Under the current process,[1] by submitting the create account form, a prospective user agrees that he or she is at least 18 years old, consents to receive communications from StubHub, and has agreed to the User Agreement and Privacy Notice, which are accessible from the registration form via a hyperlink.  An additional affirmative step has to be taken before a prospective user can complete the create account process.  Once a prospective user provides the information required on the create account form and accepts the terms of the User Agreement, StubHub sends the prospective user a confirmation email to the email address provided during registration.  The confirmation email contains instructions for completing the create account process and activating the user's account.

8.    Once the prospective user receives the confirmation email and follows the instructions for completing the create account process and activating his or her user account, he or she becomes a registered StubHub user with a valid StubHub user account.  The account can only be accessed by using his or her user email and password.

Monroe stated that Ball "registered an account using his email and agreed to the User Agreement on November 13, 2012."  Acceptance of the User Agreement, moreover, is "mandatory to create a StubHub account."

Two versions of the User Agreement are contained in our record.  The version in effect in 2021 when Ball purchased the tickets has the arbitration language on which StubHub relies, but the version in effect in 2012 when Ball created his account does not contain the arbitration provision.  According to Monroe, revisions to the User Agreement after 2012 were posted to the StubHub website according to a notice process described in the User Agreement.  Additionally, prior to each update, "StubHub notified all registered users of the User Agreement changes via outbound messages to users' email addresses."  Monroe stated that Ball has not submitted an

---

[1] In a supplemental unsworn declaration, Monroe stated that the "current" (2022) account creation process is materially the same as the process in 2012.

arbitration opt-out notice to StubHub, that his account remains open and active, and that after each User Agreement amendment went into effect Ball continued to use his StubHub account to purchase items during years 2013-2017 and 2019-2022.

The 2021 User Agreement contains the following arbitration provisions:

> . . . **CLAUSE 22 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE, WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, UNLESS YOU OPTOUT. UNLESS YOU OPT OUT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST STUBHUB ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING, AND (2) YOU WILL ONLY BE PERMITTED TO SEEK RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ON AN INDIVIDUAL BASIS.**
>
> . . .
>
> 22.1 **If you reside in the United States or Canada, You and StubHub each agree, except where prohibited by law, that any and all disputes or claims that have arisen or may arise between you and StubHub relating in any way to or arising out of this or previous versions of the User Agreement (including this Agreement to Arbitrate, as the term is defined below) or the breach or validity thereof, your use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or Services shall be resolved exclusively through final and binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its Consumer Arbitration Rules ("Rules"), rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis (together with subsections 22(A)-(F), the "Agreement to Arbitrate"). This Agreement to Arbitrate is intended to be broadly interpreted.** The Federal Arbitration Act

governs the interpretation and enforcement of this Agreement to Arbitrate.

Ball filed a response to StubHub's motion to compel. He neither objected to Monroe's declaration nor attached any controverting evidence. He argued, however, that StubHub failed to prove that he received notice of the User Agreement containing the arbitration provisions and thus failed to conclusively establish his assent to any arbitration agreement. He presented several reasons why notice was allegedly lacking, but all of them are iterations of the same fundamental point: StubHub presented no evidence of the process that put users on notice that they would be bound by the User Agreement containing the arbitration agreement.

The trial court denied StubHub's motion to compel arbitration. StubHub timely filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.016.

## Analysis

In a single issue, StubHub asserts that the trial court erred in denying its motion to compel arbitration because it presented uncontroverted evidence that Ball's DTPA claims fell within the scope of a valid, enforceable arbitration agreement. Ball counters that StubHub failed to present sufficient evidence that he was notified of the User Agreement—i.e., that there was a "meeting of the minds" as to the agreement.

## A.    Governing Law and Standard of Review

The Federal Arbitration Act ("FAA") generally governs arbitration provisions in contracts involving interstate commerce. *See* 9 U.S.C. § 2; *see also In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999) (per curiam) (orig. proceeding). Parties may also expressly agree to arbitrate under the FAA. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605-06 & n.3 (Tex. 2005) (per curiam) (orig. proceeding). The arbitration agreement here expressly provides for arbitration

5

under the FAA,[2] and, although Ball opposes arbitration, he does not contest the application of the FAA.

A party seeking to compel arbitration under the FAA must first establish that (1) there is a valid arbitration agreement and (2) the claims in dispute fall within that agreement's scope. *See In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); 9 U.S.C. §§ 2, 4. Although there is a strong presumption favoring arbitration, that presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *see In re Estate of Guerrero*, 465 S.W.3d 693, 699-703 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc).

Under Texas law, the trial court conducts a summary proceeding to determine the applicability of an arbitration clause. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992). A motion to compel arbitration is similar to a motion for partial summary judgment and is subject to the same evidentiary standards. *In re Jebbia*, 26 S.W.3d 753, 756-57 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). Thus, the party alleging an arbitration agreement must present summary proof that an agreement to arbitrate requires arbitration of the claims in dispute. *Tipps*, 842 S.W.2d at 269; *Jebbia*, 26 S.W.3d at 757. The party resisting arbitration may then contest the proponent's proof or present evidence supporting the elements of a defense to enforcement of the arbitration agreement. *Jebbia*, 26 S.W.3d at 757. If a material fact issue is raised, an evidentiary hearing is required. *Tipps*, 842 S.W.2d at 269. But in cases when the movant's evidence remains uncontroverted, the court must accept as true "the clear, direct, and positive evidence

---

[2] *See* 9 U.S.C. §§ 1-402.

6

of an undisputed affidavit, even of a party's agent." *Id.* at 270.

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id.*; *Smart Call, LLC v. Genio Mobile, Inc.*, No. 14-13-00223-CV, 2014 WL 3955083, at *4 (Tex. App.—Houston [14th Dist.] Aug. 14, 2014, pet. denied) (mem. op.). The trial court's determination of the arbitration agreement's existence and validity are legal questions subject to de novo review. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018); *J.M. Davidson*, 128 S.W.3d 223, 227.

## B. StubHub's Motion to Compel Arbitration

### 1. Online agreements are generally enforceable in Texas.

We apply ordinary principles of state contract law to determine whether the parties agreed to submit disputes to arbitration. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). For the User Agreement to be enforceable against Ball, he must have consented to its terms. *Aerotek v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021); *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). Mutual assent is the only contract element in dispute.

Whether mutual assent exists as to a contract's subject matter and essential terms is an objective inquiry, turning on what the parties said and did, not on their subjective states of mind. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Parties may manifest their assent to an agreement not only by signing a written document but by conduct, provided they intend to engage in the conduct and know or have reason to know that the other

party may infer assent from their conduct. *See BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 202 (Tex. 2021). This principle generally applies to arbitration agreements. *See Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010); *GSC Wholesale, LLC v. Young*, 654 S.W.3d 558, 563 (Tex. App.—Houston [14th Dist.] 2023, pet. denied); *Smart Call*, 2014 WL 3955083, at *5. Whether mutual assent exists is usually a question of fact, but it may become a question of law in some instances. *Foreca, S.A., v. GRD Dev. Co.*, 758 S.W.2d 744, 745-46 (Tex. 1988).

Today's case involves the purported formation of an agreement over the internet based on Ball's interaction with StubHub's website.[3] Like StubHub, many individuals and entities engaging in internet business have developed terms and conditions intended to be applicable to their transactions or relationships. Sellers or service providers commonly condition use of their websites on acceptance of such terms or require consent to them before a transaction can be completed. Texas courts have recognized the validity of electronic contracts reached over the internet. *See, e.g.*, *Barnett v. Network Sols.*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied); *Bongalis-Royer v. RJ Worldwide, LLC*, No. 4:14-CV-330, 2015 WL 12778846, at *5 (E.D. Tex. July 16, 2015).

Online or website users may manifest assent to terms and conditions by any number of processes or mechanisms, depending on how the website is designed. StubHub contends that Ball manifested his consent to the User Agreement by "clicking a button" indicating his affirmative acceptance of the terms when he

---

[3] Ball asserts that he purchased his tickets through StubHub's mobile application, as distinguished from its website. He contends that StubHub failed to prove that it provided notice of the User Agreement through the mobile application and that StubHub failed to explain the differences between purchasing tickets on the website as opposed to the mobile application. Because Ball presented no evidence that he purchased the tickets using a mobile application, we do not consider these arguments.

created his account in 2012. StubHub characterizes this process as a "clickwrap" agreement. So-called "clickwrap" online agreements are generally defined by the requirement that users assent to contract terms by "clicking" some form of "I agree" or "accept" button on a website to complete the transaction. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 718-20 (N.D. Tex. 2013); *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 905 n.15 (N.D. Tex. 2000). Texas state and federal courts have recognized the validity of clickwrap agreements. *See, e.g.*, *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 818 n.1 (Tex. App.—Fort Worth 2008, no pet.); *Barnett*, 38 S.W.3d at 204; *see also King v. Baylor Univ.*, 46 F.4th 344, 358-59 (5th Cir. 2022); *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 782-83 (N.D. Tex. 2006); *Realpage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539, 545 (E.D. Tex. 2007). Structured properly, a clickwrap agreement would conclusively demonstrate notice and acceptance of the agreement's terms. And a customer on notice of contract terms available on the internet website is bound by those terms. *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) (citation omitted).

Courts have also considered mechanisms by which users may manifest assent to online agreements other than by an explicit affirmative acceptance process. "Browsewrap" agreements, for example, are distinguishable from clickwrap agreements and typically involve a situation where a notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink. *See, e.g.*, *Sw. Airlines Co. v. BoardFirst, L.L.C.*, Civ. A. No. 3:06-CV-0891-B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007). A defining feature of a browsewrap agreement is that it does not require the user to manifest assent to the terms and conditions

9

expressly; the user need not sign a document or click on an "accept" or "I agree" button. A party instead gives his or her assent simply by using the website. *Id.* "Whereas courts routinely enforce clickwrap agreements, . . . the validity of a browsewrap license turns on whether a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site." *Phillips v. Neutron Holdings, Inc.*, No. 3:18-CV-3382-S, 2019 WL 4861435, at *4 (N.D. Tex. Oct. 2, 2019) (citations omitted); *see Sw. Airlines*, 2007 WL 4823761, at *5.[4]

Yet another variation consists of so-called "sign-in-wraps." A sign-in-wrap agreement notifies users of the existence of the website's terms and conditions and advises users that they are agreeing to the terms when registering an account or signing in. *See HomeAdvisor, Inc. v. Waddell*, No. 05-19-00669-CV, 2020 WL 2988565, at *3 (Tex. App.—Dallas June 4, 2020, no pet.) (mem. op.); *Phillips*, 2019 WL 4861435, at *4 (citing *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 75-76 (2d Cir. 2017)). As with browsewrap agreements, a sign-in-wrap agreement's enforceability generally turns on whether notice of the terms and conditions was reasonably conspicuous. *HomeAdvisor*, 2020 WL 2988565, at *3 (holding that HomeAdvisor's submittal screen provided appellees reasonably conspicuous notice of the company's terms of service, including the arbitration provision); *see also Walker v. Neutron Holdings, Inc.*, No. 1:19-CV-574-RP, 2020 WL 703268, at *3 (W.D. Tex. Feb. 11, 2020); *Phillips*, 2019 WL 4861435, at *4.

As mentioned, StubHub contends its account creation process constitutes a clickwrap type agreement. Ball does not take a position as to whether the process would result in a clickwrap, browsewrap, or sign-in-wrap agreement; he asserts only

---

[4] See for example the Second Circuit's treatment of browsewrap agreements in *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2nd Cir. 2004), and *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2nd Cir. 2002).

that StubHub failed to prove that he had notice that he would be bound by the User Agreement's terms.

> 2. StubHub did not conclusively prove Ball assented to the online User Agreement containing the arbitration provisions.

With these concepts in mind, we consider whether StubHub proved that Ball assented to the arbitration agreement. When parties have agreed to conduct a transaction by electronic means, an electronic record indicating assent to an agreement can be proven "in any manner." *See* Tex. Bus. & Com. Code § 322.009. If a party's uncontroverted affidavit is clear, direct, and positive, the court must accept it. *Tipps*, 842 S.W.2d at 270.

We conclude that Monroe's declaration and supplemental declaration, though undisputed, are not sufficiently clear, direct, and positive in their description of the account registration process to show conclusively that Ball assented to the User Agreement when he created his account, given StubHub's contention that the agreement is a clickwrap. We view the sufficiency of the proof in the context of the issue sought to be proved. If the account creation process in 2012 required Ball to accept the User Agreement by affirmatively clicking a button confirming his acceptance of the terms, then the assertions in the declarations should be clearer and more specific in order to demonstrate Ball's unambiguous assent as a matter of law. While Monroe plainly states that the User Agreement's terms must be accepted to create an account, the declarations do not explain how a potential user manifests that acceptance during the registration process. Nowhere in either declaration does Monroe attest that when Ball created his StubHub account in 2012 he affirmatively clicked on a button indicating he explicitly accepted the User Agreement. Monroe's statements are not sufficiently clear, direct, and positive to establish that the User Agreement is a clickwrap because they are simply too general. Cases in which courts

11

uphold the validity of clickwrap agreements have involved evidence describing the clickwrap process in more detail than that presented here by StubHub. *See, e.g.*, *JLR Glob., LLC v. PayPal Holding Co.*, No. 4:22-CV-559, 2023 WL 2527158, at *4 (E.D. Tex., Mar. 15, 2023) (mem. op. & order) ("PayPal has presented a declaration of an employee, who established that it would have been impossible for the two relevant PayPal accounts to have been created *without affirmatively clicking and agreeing to the User Agreement*." (emphasis added)); *Johnson v. Sw. Recovery Servs., Inc.*, No. 3:22-CV-X-BH, 2023 WL 1944127, at *1-2, 7 (N.D. Tex. Jan. 24, 2023) (magistrate's findings, conclusions, and recommendation) (defendant presented employee declaration, screenshots of blank webforms, and user agreements containing arbitration agreement; webforms specified that by clicking the button to complete an order, users were accepting and agreeing to hyperlinked terms of use agreement; declaration stated that plaintiff completed the webforms and clicked the button at the bottom of the forms); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 718-19 (N.D. Tex. 2013) ("Since the User Agreement was conspicuously presented and Plaintiffs assented to the User Agreement by clicking the 'Accept' button to complete each online transaction, it is a valid clickwrap agreement"). It may be the case that Ball did indeed manifest his assent by affirmatively clicking an "I accept" button or the like, but the declarations as worded do not say so. Their level of generality could just as well refer to a sign-in-wrap or something else.

The type of electronic assent secured by the online process makes a difference because if the agreement is something other than a clickwrap, StubHub would be required to present evidence that Ball had actual or constructive notice that he would be bound by the User Agreement's terms when creating the account or at least that the terms were reasonably conspicuous. StubHub presented no evidence bearing on notice or conspicuousness relating to the 2012 account creation process. There was

12

no description of each affirmative step Ball had to take to complete the registration process; there was no evidence of the screenshots that Ball would have seen when he registered his account; and there was no explanation of the text that was presented to Ball.

If the User Agreement is more like a sign-in-wrap, StubHub's evidence lacks clear, direct, and positive facts demonstrating reasonably conspicuous notice of the User Agreement's terms or that Ball would be bound to them. *Cf. HomeAdvisor*, 2020 WL 2988565, at *4 (noting that screen shots of HomeAdvisor's submittal pages showed that they were "uncluttered, with only a few spaces to enter information, and a large orange submit button with the phrase 'By submitting this request, you are agreeing to our Terms & Conditions' written directly underneath," and text hyperlinking the agreement's terms was "dark against a bright white background, clearly legible, and the same size as all of the text on the screen"). StubHub did not include any screen shots from its registration webpages to enable the court to evaluate whether StubHub provided Ball with "reasonably conspicuous notice" of its User Agreement. *Compare Berkson v. Gogo, LLC*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015) (mem. & order) (finding that "terms of use" were not made "readily and obviously available to [the consumer]" where the "hyperlink to the 'terms of use' was not in large font, all caps, or in bold"), *with Whitt v. Prosper Funding LLC*, No. 1:15-CV-136-(GHW), 2015 WL 4254062, at *1 (S.D.N.Y. July 14, 2015) (finding agreement to arbitrate where the term "borrower registration agreement," was underlined and shaded blue to signify a hyperlink), *and Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (hyperlink was underlined and near words to the effect that by clicking on the sign up button, the consumer is indicating that the consumer has read and agrees to the Terms of Service). "[I]n the context of web-based contracts, . . . clarity and conspicuousness

are a function of the design and content of the relevant interface." *Meyer*, 868 F.3d at 75. By failing to provide any evidence of the design and content of the relevant user interface, StubHub has not conclusively established that it provided Ball with sufficient notice of the User Agreement containing the arbitration provision. For these reasons, StubHub failed to meet its initial burden to show that Ball assented to the User Agreement in 2012.

The arbitration provisions only appear in the 2021 version of the User Agreement, and StubHub contends that it provided Ball notice of the revised terms by posting them on its website and by email. Here again, Monroe's declarations only briefly refer to the notification process for the revised agreements and do not establish conclusively that Ball assented to the 2021 version. Although the 2012 version contains change-of-terms provisions, the evidence does not show that Ball assented to the 2012 User Agreement, so it is not established that he agreed to the change-of-terms provisions. Additionally, Monroe testified that StubHub "notified all registered users of the User Agreement changes" by email, but copies of the emails (to Ball or any other user) are not attached nor is their content described in any way. *See Precision Directional Servs., Inc. v. Ferron*, No. 14-21-00082-CV, 2022 WL 3592330, at *3-5 (Tex. App.—Houston [14th Dist.] Aug. 23, 2022, no pet.) (mem. op.) (holding that defendant failed to prove it gave notice of the agreement modification).

Though Monroe's declarations constitute some evidence of an agreement, they do not show conclusively that Ball assented to the User Agreement containing the arbitration provision. The trial court could have reasonably concluded that StubHub failed to prove the existence of an arbitration agreement. When a movant seeking to compel arbitration fails in its initial burden to prove the existence of a valid arbitration agreement, the trial court does not err in denying the motion. *See*

*Smart Call*, 2014 WL 3955083, at *6-7. StubHub has not shown an abuse of discretion. *Id.*

## Conclusion

In sum, as the record stands today, we conclude that the trial court did not err in denying StubHub's motion to compel arbitration. Accordingly, we overrule StubHub's sole appellate issue. We affirm the trial court's order denying StubHub's motion to compel arbitration.


/s/    Kevin Jewell
        Justice


Panel consists of Justices Wise, Jewell, and Poissant.